IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILLIAM HANSON, III,                        :
                                            :
            Plaintiff,                      :
                                            :
      v.                                    :       C.A. No.:  05-0046 (JJF)
                                            :
LOWE'S HOME CENTERS, INC., et al.           :
                                            :
            Defendants.                     :

**DEFENDANT LOWE'S HOME CENTERS, INC.'S**
**<u>BRIEF IN SUPPORT OF SUMMARY JUDGMENT</u>**


PETER M. SWEENEY, ESQ. (DSB #3671)
Gordon, Fournaris & Mammarella, P.A.
1925 Lovering Avenue
Wilmington, DE  19806
302.652.2900
psweeney@gfmlaw.com

OF COUNSEL:

WILLIAM J. LEAHY, ESQ. (PA #80340)
MICHELE HALGAS MALLOY, ESQ.
(PA #88456)
Littler Mendelson, P.C.
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA  19102
267.402.3000

Dated: December 29, 2005

## TABLE OF CONTENTS

PAGE

I.      INTRODUCTION AND PROCEDURAL HISTORY ...........................................1

II.     SUMMARY OF ARGUMENT........................................................................2

III.    CONCISE STATEMENT OF FACTS................................................................3

        A.      Hanson's Employment with Ideal ............................................3

        B.      Hanson Records a Conversation with a Lowe's Employee........................4

        C.      Allegations of Discrimination .................................................7

        D.      Allegations of Retaliation...................................................13

        E.      Allegations Regarding Slander *Per Se* ....................................13

IV.     ARGUMENT....................................................................................14

        A.      Summary Judgment Standard...............................................14

        B.      Hanson Fails to Establish a Claim Under the Delaware
                Discrimination Act. ..........................................................16

        C.      Hanson Presents No Evidence of Race Discrimination............................17

                1.      Hanson Cannot Establish a *Prima Facie* Case of Race
                        Discrimination. .............................................18

                2.      Hanson Cannot Rebut Lowe's Articulated Reason for Its
                        Request that Ideal Remove Hanson from the Dover Store...........20

        D.      Hanson Cannot Demonstrate Gender Discrimination. .............................24

                a.      Hanson Fails to Establish a *Prima Facie* Case of
                        Gender Discrimination. ....................................25

                b.      Hanson Presents No Evidence of Gender Animus. ..........26

        E.      Hanson's Retaliation Claim Fails .............................................28

                1.      Hanson Did Not Engage in Protected Activity.............................30

                2.      Hanson's Act of Recording Vazquez Is an Intervening Act
                        that Defeats Any Presumption of Retaliation. ..............................32

        F.      Hanson Cannot Show that Lowe's Slandered Him. .................................33

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

1.    Requirements of Slander *Per Se* Claim. .........................................34

2.    Because the Alleged Slanderous Statement Was True, By Definition It Cannot Be Defamatory, and Hanson's Slander *Per Se* Claim Fails .........................................................................34

3.    Lowe's Did Not Make the Alleged Defamatory Statement Because the Communication At Issue Is Not Attributable To Lowe's. ....................................................................................35

G.    Hanson Cannot Show Tortious Interference with Contract......................37

1.    Delaware Does Not Recognize a Claim for Tortious Interference with At-Will Employment.......................................37

2.    Lowe's Actions Were Justified.......................................................37

V.    CONCLUSION .................................................................................39

TABLE OF AUTHORITIES

PAGE

**Cases**

Abramson v. William Patterson College of N.J., 260 F.3d 265 (3d Cir. 2001) ...............29

Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, (7th Cir. 2003)...................23, 31

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)........................14, 15, 38

Barber v. CSX Distribution Services, 68 F.3d 694 (3d Cir. 1995)..............30, 31

Bowl-Mor Co., Inc. v. Brunswick Corp., 297 A.2d 61, 66 (Del.Ch. 1972) .....................38

Braithwaite v. Timken Company, 258 F.3d 488 (6th Cir. 2001) ........................22

Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326 (3d Cir. 1995) ....................................21

Campbell v. Abercrombie & Fitch, Co., Civ.A.No. 03-3159, 2005 WL 1387645 * 8-9 (D.N.J. Jun. 9, 2005)...................................................................32, 33

Cantor Fitzgerald, L.P. v. Cantor, 724 A.2d 571, 584 (Del. Ch. 1998)...........................37

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ....................................15

Childress v. Downs, Civ. A. No. 98-206, 2000 WL 376419 *14 (D. Del. Mar. 31, 2000) ................................................................................18

Cuffee v. The Dover Wipes Company ....................................................29, 31

Delaware Express Shuttle, Inc., v. Older, Civ. A. No. 19596, 2002 WL 31458243 *21 (Del.Ch. Oct. 23, 2002) .......................................................34

Doe v. Cahill, 884 A.2d 451 (Del. 2005) ........................................34

Drainer v. O'Donnell, Civ. A. No. 94C-08-062, 1995 WL 338700 *4 (Del. Super. Jul. 28, 1995)..................................................................35

Edwards v. Concord EFS, Inc., Civ. A. No. 03-599, 2004 WL 1636970 *6 (D. Del. Jul. 20, 2004)..................................................................20, 26

Ferreri v. Mac Motors, Inc., 138 F. Supp. 2d 645 (E.D. Pa. 2001)(citations omitted)......21

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)...................17, 18, 20, 24, 25, 27

TABLE OF AUTHORITIES

PAGE

Hursey Porter & Associates v. Bounds, Civ. A. No. 93C-01-901, 1994 WL 762670 * 13-14 (Del. Super. Dec. 2, 1994) ................................................................38

Irwin & Leighton, Inc. v. W.M. Anderson Co.,  532 A.2d 983, 992 (Del.Ch. 1987) .......38

Jones v. School District of Philadelphia, 198 F.3d 403 (3d Cir. 1999). ......................18, 24

Keller v. Orix, 130 F.3d 1101 (3rd Cir. 1997)..............................................................22, 27

Knott-Ellis v. Delaware Department of Correction, Civ. A. No. 00-826, 2001 WL 935621 *4 (D. Del. Aug. 31, 2001) ................................................................20, 26

Lewis v. University of Pittsburgh, 725 F.2d 910, n.5 (3d Cir. 1984)...............................17

Little v. Republic Refining Co., 924 F.2d 93 (5th Cir. 1991)(citations omitted)...............24

Martin v. Widener University School of Law, Civ. A. No. 91C-03-255, 1992 WL 152540 *11 (Del. Sup. Jun. 17, (1992)..........................................................34

Momah v. Albert Einstein Medical Center, 978 F. Supp. 621 (E.D. Pa. 1997) ................28

Park v. Georgia Gulf Corp., Civ. A. No. 91-569, 1992 WL 714968 *9 (D. Del. Sept. 14, 1992)...............................................................................37

Rizzitiello v. McDonald's Corp., 868 A.2d 835,  (Del. 2005) ....................................24, 28

Rosario v. Ken-Crest Services, Civ. A. No. 04-CV-4737, 2005 WL 1377843 (E.D. Pa. Jun. 6, 2005) ................................................................................19

Screpesi v. Draper-King Cole, Inc., Civ. A. No. 95C-05-029, 1996 WL 769344 * (Del. Super. Dec. 27, 1996) ................................................................35, 36

Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, (3d Cir. 1998).........27

Singh v. Wal-Mart Stores, Inc., Civ. A. No.  98-1613, 1999 WL 374184 at *6 (ED. Pa. June 10, 1999)..........................................................................18

Tasadfoy v. Ruggiero, Civ. A. No. 03-6088, 2005 WL 894703 (S.D.N.Y. Apr. 14, 2005) ................................................................................33

Vakharia v. Swedish Covenant Hospital, 190 F.3d 799 (7th Cir. 1999)...........................23

Weston v. Commonwealth of Pennsylvania, 251 F.3d 420 (3d Cir. 2001).......................29

TABLE OF AUTHORITIES

PAGE

**Statutes**

19 Del. C. § 710.................................................................................................1

19 Del. C. § 711(a) ............................................................................................16

19 Del. C. §710(5) .............................................................................................16

42 U.S.C. § 1981 ................................................................................................1

**Rules**

Restatement (Second) of Agency § 228 (1957).................................................35

Restatement (Second) of Torts § 767 (1979)....................................................38

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff William Hanson, III ("Hanson") sued Lowe's and co-defendant Ideal Merchandising & Services Unlimited, Inc. ("Ideal") following Ideal's termination of his employment on January 23, 2004.  Ideal terminated Hanson's employment after receiving a phone call from Linda Myers, the Sales Manager of Lowe's Dover store, requesting that Hanson no longer service the Dover store.  Myers' phone call was prompted by the complaint of Lowe's employee Carlos Vazquez, who advised that, while working in the Dover store, Hanson had recorded a conversation between Vazquez and Hanson. Lowe's has a written policy prohibiting audio recording of employees.  Because Hanson violated this policy, Myers requested that Ideal no longer send Hanson to the Dover store. Ideal subsequently terminated Hanson's employment because it had no other work for him.

After Ideal terminated his employment, Hanson filed a charge of discrimination against both Ideal and Lowe's asserting that he was subjected to discrimination because he is a male of Asian American origin.[1]  Hanson also claimed that he was terminated in retaliation for complaining about alleged harassment.  Hanson subsequently filed this action, asserting that Lowe's discriminated and retaliated against him on the basis of his gender, race and national origin in violation of 19 Del. C. § 710 et seq.; that Lowe's subjected him to racial discrimination and retaliation in violation of 42 U.S.C. § 1981;[2] that Lowe's tortiously interfered with his employment with Ideal; and that Lowe's

---

[1]  Hanson's mother is Korean and his father is Caucasian.  (See Hanson dep., Exhibit A, pp. 190-91 (A49)).

[2]  Hanson also asserted the same discrimination and retaliation claims against defendant Ideal.

defamed him.  Discovery has revealed that Hanson's claims lack merit and should,

therefore, be dismissed.  Accordingly, Lowe's files this Motion requesting that the Court

dismiss all Hanson's claims against Lowe's.

## II.    SUMMARY OF ARGUMENT

1.    Because Hanson Was Not an Employee of Lowe's, He Cannot Pursue a Claim Under the Delaware Discrimination Act Against Lowe's.

2.    Hanson's Race Discrimination Claim Under Section 1981 and the Delaware Discrimination Act Fails Because Hanson Cannot Establish a *Prima Facie* Case of Race Discrimination.

3.    In the Alternative, Hanson's Race Discrimination Claim Fails Because Hanson Has Come Forward With No Evidence of Racial Animus.

4.    In the Event that Hanson Can State a Claim Under the Delaware Discrimination Act, His Gender Discrimination Claim Fails Because He Cannot Establish a *Prima Facie* Case of Gender Discrimination.

5.    In the Alternative, Hanson Cannot Show that His Gender Motivated Lowe's.

6.    In the Event that Hanson Can State a Claim Under the Delaware Discrimination Act, His National Origin Discrimination Claim Fails Because He Cannot Establish a *Prima Facie* Case of National Origin Discrimination.

7.    In the Alternative, Hanson Presents No Evidence of National Origin Animus by Lowe's.

8.    Hanson's Retaliation Claim Fails Because Hanson Did Not Engage in Protected Activity.

9.    Hanson's Retaliation Claim Fails Because Hanson's Intervening Act of Violating Lowe's Recording Policy Defeats the Required Causal Connection.

10.    Hanson's Slander *Per Se* Claims Fails Because the Alleged Communication was Substantially True.

11.    Lowe's Did Not Make Any Defamatory Communication About Hanson.

12.    Hanson Cannot State a Claim for Tortious Interference with Contract Against Lowe's Because He Was an At-will Employee.

13.    Alternatively, Hanson's Tortious Interference with Contract Claim Fails Because

Lowe's Actions Were Justified.

## III.    CONCISE STATEMENT OF FACTS

### A.    Hanson's Employment with Ideal

William Hanson began employment with Ideal in early October 2003 as a merchandiser.  (See Hanson dep., Exhibit A, p. 156 (A40)).  Hanson's job responsibilities required him to service Lowe's Dover and Middletown stores in the plumbing and electrical departments.  (See Hanson dep., Exhibit A. pp. 164-65 (A42)).  Hanson, however, was not an employee of Lowe's and did not report to any Lowe's employee. (See Hanson dep., Exhibit A, p. 169 (A43)).  Hanson performed work at the Middletown store on Monday and Tuesday, and at the Dover store on Wednesday and Thursday.  (See Hanson dep., Exhibit A, pp. 164-65 (A42)).   As a merchandiser, Hanson's job was to market particular products sold in Lowe's plumbing and electrical department.   Hanson would do this by creating and repairing product displays, creating and repairing shelf stickers and tidying the product on the shelves.  Hanson was also responsible for ensuring that product was in stock and not damaged.  (See Hanson dep., Exhibit A, pp. 162-65 (A42-45)).

Hanson reported directly to Jeremy Leaman, Ideal's District Manager.  (See Hanson dep., Exhibit A, pp. 159-60 (41)).  Hanson, as an Ideal employee, was required to project the image of the product, Ideal and Lowe's.  (See Hanson dep., Exhibit A, pp. 176-77 (A45); see also, job description, Exhibit B (A153)).  Hanson also understood that he was required to interact with Lowe's employees and Lowe's customers in a professional and courteous manner.  (See Hanson dep., Exhibit A, pp. 178-79 (A46); job

description, Exhibit B (A153)).

Hanson was required to adhere to the policies set forth in Ideal's Employee Handbook. In the Introduction section of this Handbook, in boldface, appears the following:

> It is required of each employee, while working in a Lowe's Store, you abide by that store's practices, policies and procedures in that state, as well as the guidelines set forth in this Handbook.

(See Ideal Employee Handbook, Exhibit C (A154-75)). Lowe's has a policy prohibiting the use of recording equipment in its stores, which specifically states:

> No employee or other individual may openly or secretly or otherwise record or videotape any conversations, communication, activity, or event that in any way involves the Company, the employees of the Company, any of the Company's subsidiaries or affiliates, any customers or clients, or any other individual with who the Company is doing business or intending to do business in any capacity.
>
> ****
>
> Employee violations will be subject to disciplinary action up to and including termination. If the conduct in which the employee is engaged is illegal, violators may also be subject to prosecution under applicable, federal, state, or local laws.

(See Prohibition of Recording Equipment Use, "Recording Policy", Exhibit D (A 176)).

Thus, Hanson was not allowed to record conversations with employees of Lowe's. (See Myers Dep., Exhibit E, p. 45 (A185)).

### B.    Hanson Records a Conversation with a Lowe's Employee

In January 2003, Hanson brought a tape recorder to work with him at the Dover store. Hanson then engaged in conversation with a Lowe's employee, Carlos Vazquez,

4

and recorded that conversation.[3]  (See Hanson dep., Exhibit A, p. 363 (A92)).

Apparently, during this conversation Hanson and Vazquez engaged in sexual banter.

(See Hanson dep., Exhibit A, pp. 367-70 (A93-94)).  Although Hanson's and Vazquez's

versions of what happened differ slightly, they agreed on the following facts:  Hanson

asked Vazquez to repeat a comment that Vazquez had made earlier.  Vazquez then asked

if he meant the remark about "my dick in your mouth."  (See Hanson dep., Exhibit A, pp.

367-68 (A93)).  Hanson replied, "you didn't say that loud enough."  (See Hanson dep.,

Exhibit A, pp. 368-69 (A93)).[4]

Following this recorded conversation, Vazquez questioned Hanson about the tape

and Hanson gave it to him.  (See Hanson Dep., Exhibit A, at p. 365 (A92)).  Vazquez

later called Myers and told her that Hanson had recorded him without permission.

Vazquez told Myers that he had the tape and that he was concerned about what he had

said on the tape.  (See Myers dep., Exhibit E, pp. 66-67 (A186-87)).  Myers called

Schreiber at home and informed her of the conversation that she had with Vazquez.  (See

Myers dep., Exhibit E, pp. 38-39 (A181a –A181b)).  Myers and Schreiber discussed

---

[3]  Throughout this litigation, including an investigation conducted by the Delaware Department of Labor, Hanson insisted that he had never recorded any conversations with employees of Lowe's at the Dover store. See, e.g. Complaint, attached as Exhibit F, ¶ 17 (A190).  During his deposition, however, after being confronted with the tape recording he made, Hanson changed his story and admitted that he had recorded a conversation.  (See Hanson dep., Exhibit A, pp. 365-66 (A92)).

[4]  According to Hanson, Vazquez knew that he was recording the conversation.  Hanson also testified that his conversation with Vazquez was more extensive, including a discussion about Hanson's use of the tape recorder to assist him with his job duties.  (See Hanson dep., Exhibit A, pp. 343-44 (A87)).  Hanson claims that he handed the tape to Vazquez and told him that he "may learn something from it."  In contrast, Vazquez told Myers that he was not aware that the conversation was being recorded until Hanson asked him to comment louder, and he saw the recorder.  (See Myers dep., Exhibit E, p. 67 (A187)).  Vazquez then took the tape from Hanson.  The recording Hanson made was produced in discovery.  The initial recording on the tape is "testing 1-2-3" and then there is a voice stating "check it out mother fucker."  (See Hanson dep., Exhibit A, pp. 363-65 (A92)).  Contrary to Hanson's assertions that he had been using the tape recorder for business purposes, the only part of the conversation between Hanson and Vazquez that Hanson recorded was the sexual references.  (See Hanson dep., Exhibit A, p. 369 (A93)).  There are no recordings reflecting Hanson's job duties on this tape.  (See Hanson dep., Exhibit A, 358-60 (A91)).

Lowe's policy prohibiting recordings in the store and agreed that Leaman needed to be made aware of Hanson's conduct. (See Myers dep., Exhibit E, pp. 38-39 (A181a-A181b)). Myers then called Jeremy Leaman and relayed Hanson's conduct to him. (See Myers dep., Exhibit E, pp. 40, 43-44 (A182-84)). Myers told Leaman that she believed it would be best for Hanson not to be assigned to the Dover store anymore. (See Hanson dep., Exhibit A, pp. 372-73 (A94), Myers dep., Exhibit E, p. 44 (A184)).

Leaman called Hanson and explained that he had received a phone call from Myers asking that Hanson no longer service the Dover store because he had recorded conversations with Lowe's employees. (See Hanson dep., Exhibit A, pp. 338-41 (A86)). Hanson asked that Leaman make sure that Schreiber was aware of what was happening, because he believed she was the only person who could authorize his removal. Leaman confirmed that Schreiber approved his removal from the Dover store. (See Hanson dep., Exhibit A, p. 339 (A86)). Hanson then asked Leaman if he could continue to work in a part-time position for Ideal, servicing the Lowe's Middletown store. Leaman told him that there was no part-time position, and that his employment with Ideal was terminated. (See Hanson dep., Exhibit A, pp. 340-41 (A86)).

In his deposition, after listening to the conversation he recorded, Hanson agreed that Myers' belief that he had recorded conversations in the store was reasonable. (See Hanson dep., Exhibit A, pp. 373-74 (A94-95)). Hanson conceded that his actions had violated Lowe's policy. (See Hanson dep., Exhibit A, pp. 376-77 (A95)). Although Hanson now claims that, at the time, he was unaware of Lowe's policy prohibiting the recording of conversations, Hanson admits that during a conversation with Leaman

6

regarding recording conversations in the Dover store, he told Leaman, "I can't do that." (See Hanson dep., Exhibit A, pp. 464-66 (A117)).

## C.    Allegations of Discrimination

Although Hanson admits that (1) he was aware that he could not tape record conversations with others in the Dover store; (2) he in fact recorded a conversation in the Dover store; and (3) he was told that he could no longer service the Dover store because of such conduct, Hanson asserts that his termination was not because of his actions, but because he is an Asian-American male. To support his claim that he was discriminated against because he is an Asian American male, Hanson summarily points out that he is, in fact, an Asian-American male. Although Hanson's primary evidence of discrimination is his race and gender, he also attempts to buttress his discrimination claims by referencing a myriad of difficulties he allegedly experienced while working at the Dover store. [5]

Hanson performed work in the Dover store three separate times. First, in 1996, while attending college, Hanson was actually employed by Lowe's as a sales associate. (See Hanson dep., Exhibit A, pp. 18-21 (A6)). Hanson resigned his position at Lowe's in 2001 and began work as a merchandiser with Spectrum Brands. (See Hanson dep., Exhibit A, pp. 27-28 (A8), 103 (A27)). As a Spectrum employee, Hanson's duties included merchandising at the Dover store. (See Hanson dep., Exhibit A, p. 103-07 (A27-28)). After being laid off from Spectrum, Hanson began employment with Ideal for whom he serviced the Dover store. (See Hanson dep., Exhibit A, pp. 156-59 (A40-41)).

---

[5]  Incredibly, Hanson seeks to support his current claims by reaching back in time to when he was a Lowe's employee. Hanson worked at Lowe's from 1996 through 2001. Whatever events that supposedly occurred back then have no relevance to his current claims and are not at issue in this case.

### 1. Hanson's Employment with Lowe's

As evidence of discrimination against Lowe's, Hanson asserts that Schreiber was difficult to work with and rude during the time that Hanson was employed by Lowe's. (See Hanson dep., Exhibit A, pp. 300-02 (A76-77)). According to Hanson, Schreiber made snide remarks and indicated disappointment in employees, including Hanson, who did not do what she asked. (See Hanson dep., Exhibit A, pp. 49-56 (A13-15)). Hanson testified that as a result of Schreiber's management style, a number of employees quit Lowe's.[6] (See Hanson dep., Exhibit A, pp. 56-57 (A15)). Hanson had similar issues with Myers. (See Hanson dep., Exhibit A, pp. 85-86 (A22-23)). Hanson testified that he did not think that Myers treated him "fair." (See Hanson dep., Exhibit A, p. 89 (A23)). He claims that Myers left him more work lists than she left for other employees, although he concedes that Myers did give work lists to other employees . (See Hanson dep., Exhibit A, pp. 89-93 (A23)). Hanson complains that Myers walked past him too frequently in the store and "micromanaged" him. (See Hanson dep., Exhibit A, pp. 93-97 (A23-24)). Additionally, Hanson speculated that Myers was "upset" with him because he would not work additional shifts. (See Hanson dep., Exhibit A, pp. 97-98 (A25-26)). As with Schreiber, Hanson testified that other Dover store employees, both men and women of various races, had similar issues with Myers. (See Hanson dep., Exhibit A, pp. 98-102 (A26-27)).[7]

---

[6] Hanson stated that the employees who quit were both men and women of various racial backgrounds. (See Hanson dep., Exhibit A, pp. 58-62 and 69-72 (A16-19)).
[7] Of course, none of the supposed incidents that happened in the 1996-2001 time period are the subject of this litigation.

In contrast to Hanson's claim that Schreiber and Myers were rude to him, both Schreiber and Myers explained that during most of his employment with Lowe's, Hanson was a good employee. (See Myers dep., Exhibit E, p. 24 (a178a); see also deposition of Yvette Schreiber, Exhibit G, p. 22 (A201)). He performed his job duties competently and they relied frequently on his job knowledge and skills. (See Schreiber dep., Exhibit G, p. 22 (A201)). Towards the end of his tenure with Lowe's, Myers noticed a decline in Hanson's performance, which she credited to personal problems unrelated to his employment. (See Myers dep., Exhibit E, pp. 23-24 (A 178a-178b).

## 2. Hanson's Employment with Spectrum

Hanson testified that after he left Lowe's and returned as a vendor for Spectrum, his difficulties with Schreiber continued.[8] During the six months that Hanson worked for Spectrum, his chief complaint about Schreiber was that she would not work with him to promote Spectrum's products. (See Hanson dep., Exhibit A, pp. 109-11 (A28-29)). According to Hanson, instead of allocating floor space for Spectrum's products, Schreiber instructed him to work with the appropriate department manager, Debbie Lenhart. (See Hanson dep., Exhibit A, pp. 122-125 (A32); 131-34 (A34-35)). Lenhart explained to Hanson that he could not have a particular spot for the product he was merchandising because that spot was reserved for another manufacturer, with whom Lowe's had a long-standing relationship. (See Hanson dep., Exhibit A, pp. 123-25 (A32)). Although Hanson seeks to blame Schreiber for his difficulties vending for

---

[8] Hanson's claim that he was put upon by Schreiber and Myers when he was an employee of Lowe's is logically inconsistent with his conduct. After resigning from Lowe's, Hanson accepted employment with two other companies that provided merchandising services to Lowe's. Hanson, at the time he accepted each position, would have known that he would, at times, be working in proximity to Schreiber and Myers.

Spectrum, his testimony acknowledges that there were other supposed impediments to his job:

> . . . the problem is there's too many managers.  I mean,
> I had an approval from another manager . . . And I had placed
> some product there with approval . . . Then Yvette happened to
> walk by and she got in the conversation and she goes you
> don't do anything without going through me first or Debbie . . . .

(See Hanson dep., Exhibit A, pp. 137-38 (A35-36)).

On another occasion when Hanson was working with Spectrum, Hanson pulled ten pallets down from overstock and set them all in the aisle to work with the product on them.  Schreiber noted the ten pallets in the aisle and told Hanson to put five back up in overstock and to finish with the remaining pallets as quickly as he could.  (See Hanson dep., Exhibit A, pp. 140-46 (A36-37)).[9]

### 3.  Hanson's Employment with Ideal

Hanson began working for Ideal in October 2003.  (See Hanson dep., Exhibit A, p. 156 (A40)).  In his role as a merchandiser for Ideal, Hanson's duties required that he service the Dover store two days a week.  (See Hanson dep., Exhibit A, pp. 164-65 (A42-43)).  Hanson claims that, after accepting the position with Ideal, the alleged discrimination worsened.

Hanson claims that Schreiber tended to "micromanage" and would instruct merchandisers on what needed to be performed in the store, even though the merchandisers were not Lowe's employees.  (See Hanson dep., Exhibit A, pp. 64-65 (A17)).  Hanson testified that Schreiber once told him that the section in which he was

---

[9] Myers testified that Debbie Lenhart is the manager who addressed the pallet issue.  (See Myers dep., Exhibit E, pp. 26-28 (A179-81)).

working "looks like shit." (See Hanson dep., Exhibit A, pp. 212-14 (A54-55)). Hanson

acknowledged that the section Schreiber was speaking of was "average." (See Hanson

dep., Exhibit A, pp. 214 (A255)). Hanson further testified that Schreiber called him

"boy" on three occasions, gave him a difficult time regarding painting the overhead

beams in the electrical department, sent him home to get his vendor vest, told him not to

drink coffee near the store entrance,[10] micromanaged him, and complained that the

product display for which he was responsible did not look good. (See Hanson dep.,

Exhibit A, pp., 232-39, 252, 269-72, 279-82 (A59-61, A64, A68-69, A71-72)).

When asked why he believed such treatment was motivated by his gender,

Hanson had difficulty explaining the basis for his claim. Hanson's testimony in this

regard highlights the fact that gender was not a factor in his alleged treatment by

Schreiber and/or Myers:

> Q:    Why do you think they were because of your sex?
>
>                   *****
>
> A:    . . . . I have to look at it from the sex perspective because
>       they are both females and they are both from the same
>       Lowe's store in Louisiana. They know each other. . . . I
>       have no other choice, but to look at it as sex, because, like I
>       said, they are both females and I don't know what it is
>       about what I have done . . .
>
> Q:    Because they are both female?
>
> A:    Because they are both female and other female vendors
>       weren't getting treated the way I was.
>
>                   *****
>
> Q:    Were there other male vendors who were treated—were
>       there other male vendors?

---

[10] Hanson initially stated that Schreiber saw him on the sales floor drinking coffee. (See Hanson dep., Exhibit A, pp. 383-84 (A97)). Hanson changed his version of events during his deposition and asserted that he was outside the Lowe's store drinking coffee. Schreiber recalled the incident and testified that she found Hanson drinking coffee on the sales floor, between aisles 6 and 7. (See Schreiber dep., Exhibit G, pp. 41-42 (202-203)).

11

> A:     Yes, sir.
>
> Q:     How were they treated, as badly as you?
>
> A:     They were treated great, they were left alone.

(See Hanson dep., Exhibit A, pp. 286-89 (A73)).  Further, Hanson admits that he heard

that Schreiber was harsh to females as well.  (See Hanson dep., Exhibit A, pp. 214-19

(A55-56)).

Similarly, when asked why he believed that the alleged harassment was because

of his race, Hanson responded:

> I'd have to look at it from my race because I was the only
> one of Asian descent. . . . so I had to look at it from that
> perspective , too. . . . because I can't think of any other reason
> that I have been given these hardships . . . for working
> for Ideal.
>
> \*\*\*\*\*
>
> Because people of different races, African American or Caucasian
> descent, weren't treated in the same manner as I was treated.

(See Hanson dep., Exhibit A, pp. 289-90 (A73-74)).

Hanson's race discrimination claim is belied by his later testimony that Schreiber

treated other, non-Asian vendors the same as she treated him:

> Q:     . . . What was going on with Mr. Folder and Mr.
>        Ramirez?
>
> A:     Yvette was basically doing the same thing to them
>        that she was doing to me, and that's micromanaging
>        their work, and as vendors, that usually typically
>        doesn't happen at the Lowe's store, so she was
>        basically treating them as if they were Lowe's
>        employees, except treating them worse.
>
> Q:     Treating them the same way she treated you?

A:    Correct.

******

Q:    So neither of them was Asian?

A;    Correct.

(See Hanson dep., Exhibit A, pp. 392-93 (A99)).

### D.    Allegations of Retaliation

On December 3, 2003, Hanson called Lowe's corporate Customer Care Line and complained about Schreiber's treatment of him. (See Hanson dep., Exhibit A, pp. 257-264 (A65-67); see also Customer Care Line Fax Incident, Exhibit H (A205-07)). During that call, Hanson reported that he constantly had run-ins with Schreiber, that Schreiber made snide comments and made the work environment unpleasant for him. (See Hanson dep., Exhibit A, pp. 260-61 (A66); Customer Care Line Fax, Exhibit H (A205-207)). Hanson does not recall mentioning that he believed Schreiber's alleged conduct was because he is male or because he is Asian-American.[11] (See Hanson dep., Exhibit A, pp. 262-64 (A67)). Hanson later received a phone call from Jeremy Leaman explaining that any issues that he had with Lowe's employees should go through Leaman. (See Hanson dep., Exhibit A, pp. 265 (A67)).

### E.    Allegations Regarding Slander Per Se

Hanson claims that in March 2004, about one month after Ideal terminated his employment, he learned from two other vendors, Jeff Ramirez and Steve Folder, that

---

[11] Even if it is assumed that Hanson mentioned his race and gender as reasons for the purported poor treatment, such allegations were not documented in the Customer Care Line Fax Incident. (See Exhibit H (A205-207).) Because Schreiber's and Myers' knowledge of Hanson's complaint was limited to the information contained in the Customer Care Line Fax Incident, they cannot be attributed with knowledge of a complaint of discrimination.

13

Vazquez was "basically bragging about getting [Hanson] terminated at Lowe's." (See Hanson dep., Exhibit A, pp. 387-88 (A98)). Apparently, Hanson heard that Vazquez told Ramirez and Folder that "he got, uhm, a tape recording and that he used that to give to Linda to get [Hanson] terminated." (See Hanson dep., Exhibit A, p. 388 (A98)). Hanson admits that this is hearsay. (See Hanson dep., Exhibit A, p. 388 (A98)). Hanson also agrees that he has no reason to believe Vazquez's alleged comment was untruthful:

> Q:    . . . Now, as far as you know, had Carlos given a tape to Linda?
>
> A:    The only, like I said, it's hearsay. I—based on what Steve and Jeff told me, that's what I know, but knowing that I am the one that gave Carlos the tape, I had no reason to believe that he didn't do it because Linda told Jeremy that I was terminated because of recorded conversations and Carlos—I gave Carlos the tape, so, therefore, Carlos gave Linda the tape.

(See Hanson dep., Exhibit A, pp. 391-92 (A99)). Further, the record demonstrates that this statement, if it was made, was truthful – Vazquez gave the tape recording Hanson made of their conversation to Schreiber, and, as a result of the recordings, Ideal terminated Hanson after Lowe's requested that Hanson no longer service the Dover store. (See Schreiber dep., Exhibit G, p. 68 (A204)).

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

determining whether summary judgment is appropriate, this Court must accept the evidence of the non-moving party as true and make all reasonable inferences in the non-moving party's favor. See id. at 255. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. Id. at 249. While the moving party bears the initial burden of informing the court of the portions of the record which demonstrate the absence of a genuine issue of fact, the moving party is entitled to summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Here, Lowe's is entitled to summary judgment on each of Hanson's asserted claims. First, as to his discrimination claims, Hanson has presented no evidence demonstrating that Lowe's actions were motivated by race, national origin, gender or retaliation. Second, as to his slander *per se* claim, the evidence is clear that the alleged slanderous remark was truthful and was not made by a Lowe's agent. Finally, Hanson has presented no evidence that would establish that Lowe's acted with intent to interfere with his employment with Ideal or that Lowe's report to Ideal was not justified by his own misconduct.

**B.    Hanson Fails to Establish a Claim Under the Delaware
Discrimination Act.**

Because Lowe's was not Hanson's employer at the time the events alleged in the

Complaint occurred, Hanson cannot maintain a claim under the Delaware Discrimination

Act against Lowe's.  The purpose of the Delaware Discrimination Act is to prevent

employers from discriminating against their employees.  19 Del. C. § 711(a).  The

Delaware Discrimination Act states:

> (a)  It shall be an unlawful employment practice for an
> employer to:
>> (1)  fail or refuse to hire or to discharge any individual
>> or otherwise to discriminate against any individual with
>> respect to compensation, conditions or privileges of
>> employment because of such individual's race . . . sex or
>> national origin.

19 Del. C. § 711(a).  The statute further defines "employee" as "an individual employed

by an employer."  19 Del. C. §710(5).

It is undisputed that Hanson was an employee of Ideal, not Lowe's, during the

relevant time period.  (See Hanson dep., Exhibit A, p. 156 (A40)).  Without the requisite

employer-employee relationship between Hanson and Lowe's, Hanson's claims under the

Delaware Discrimination Act fail.

### C.    Hanson Presents No Evidence of Race Discrimination[12]

Section 1981 claims are analyzed using the same framework applied to Title VII

claims.  See e.g., Lewis v. University of Pittsburgh, 725 F.2d 910, 915, n.5 (3d Cir.

1984)(stating that Section 1981 claims require the same elements of proof as a Title VII

action).  Thus, to proceed on his discrimination claim, Hanson must first establish a

*prima facie* case of race discrimination.  If Hanson successfully establishes a *prima facie*

case of discrimination, the burden of production shifts to Lowe's to articulate a

legitimate, non-discriminatory reason for its actions.  Once Lowe's states a legitimate

reason, Hanson is required to point to evidence upon which a factfinder could reasonably

(1) disbelieve Lowe's articulated reasons for the decision; or (2) believe that

discrimination was more likely than not a motivating or determinative factor in Lowe's

decision.  See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Hanson bears the

ultimate burden of persuasion in a disparate treatment case and, therefore, Lowe's is

entitled to summary judgment if it can show that Hanson cannot carry his burden of proof

at trial.

To establish a *prima facie* case of discriminatory termination under Section 1981,

Hanson must show: (1) he is a member of a protected class; (2) he was qualified to be a

vendor for Ideal; (3) he was subject to an adverse employment action; and (4) the

circumstances of the action give rise to an inference of discrimination.[13]  Jones v. School

---

[12] In addition to the § 1981 claim, Hanson also asserts a race and national origin claim under state law.  The questionable merit of these state law claims is discussed *supra*, IV. B.  Nevertheless, the analysis applied to Hanson's § 1981 claim applies equally to his state law race discrimination claim, and by analogy his national origin claim.

[13]  Although Hanson was not an employee of Lowe's, Section 1981 discrimination claims are not limited to employees.  Other courts have articulated slightly different *prima facie* elements for non-employment

District of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999). Not only does Hanson fail

to establish a *prima facie* case of race discrimination, he cannot point to any evidence

sufficient to call into doubt Lowe's conclusion that he had violated its policy by

recording a conversation with another Lowe's employee, which led to its request that he

not be placed in the Dover store. Nor can Hanson point to any evidence that would

permit a jury to find that discrimination was a motivating factor in Lowe's actions.

> 1.    **Hanson Cannot Establish a *Prima Facie* Case of Race Discrimination.**

Hanson's race discrimination claim cannot survive summary judgment because

Hanson cannot set forth a *prima facie* case of discrimination. Although Hanson can show

that he is a member of a protected class and that he was qualified to service the Dover

store, Hanson has failed to satisfy the final prong of his *prima facie* case—circumstances

surrounding Lowe's actions which give rise to an inference of discrimination. The

circumstances surrounding Lowe's request that Hanson no longer be assigned to the

Dover store do not suggest race discrimination. See Childress v. Downs, Civ. A. No. 98-

206, 2000 WL 376419 *14 (D. Del. Mar. 31, 2000)(concluding that plaintiff's failure to

present evidence that employees not of the same protected class as plaintiff were treated

more favorably precluded the plaintiff from establishing a *prima facie* case of

discrimination).

---

Section 1981 claims. See, e.g., Singh v. Wal-Mart Stores, Inc., Civ. A. No. 98-1613, 1999 WL 374184, at
*6 (E.D. Pa. June 10, 1999)(finding that a *prima facie* case under Section 1981 by a customer against a
retailer requires the plaintiff demonstrate: (1) that he is a member of a protected class; (2) that he attempted
to make, enforce, or secure the performance of a contract; (3) he was denied the right to do so; and (4) that
the opportunity to make, enforce or secure the performance of a contract for like goods or services
remained available to similarly situated persons outside the protected class). Given the nature of Hanson's
claim, the most appropriate *prima facie* analysis is that applied by courts in employment cases.

Hanson admits that he tape recorded a conversation he had with a Lowe's employee. Lowe's policy prohibits audio recording in its stores.[14] In view of Hanson's admitted violation of Lowe's Recording Policy and the discipline that Lowe's may impose on its own employees for such violations, to defeat summary judgment, Hanson must provide some reason to believe that Lowe's request that he be removed from servicing its store was racially motivated. Hanson has not done this.

The only evidence that Hanson has to support Lowe's alleged discriminatory motive is the simple fact that he is Asian-American and Schreiber and Myers are not.[15] Although Hanson points to issues he had with Schreiber and Myers, he has failed to come forward with evidence that other, non-Asian-American vendors were generally treated better than he. In fact, Hanson admits that Schreiber and Myers treated two other non-Asian-American vendors, Ramirez and Folder, in the same manner as they treated him. (See Hanson dep., Exhibit A, pp. 392-93 (A99)). Thus, Hanson cannot reasonably assert that he was treated differently because of his race. With respect to the specific request that he no longer work at the Dover store, Hanson has failed to point to one similarly situated person who had violated Lowe's Recording Policy and was not asked to leave the Dover store. Accordingly, Hanson has failed to set forth a *prima facie* case of race discrimination and this Court should dismiss his Section 1981 claim. See Edwards v.

---

[14] Logically, since Lowe's reserves the right to discipline its own employees for violating its Recording Policy, Lowe's can legitimately expect the employees of its venders to adhere to this policy as well and, in fact, Ideal's Handbook requires its employees to do so.

[15] Hanson also asserts that he was purportedly treated unfairly by Schreiber and Myers and that this treatment is sufficient to create an inference of discrimination. Even taking Hanson's allegations as true, there is still no evidence of racial animus because Hanson fails to link the alleged unfair treatment to his race. See Rosario v. Ken-Crest Services, Civ. A. No. 04-CV-4737, 2005 WL 1377843, (E.D. Pa. Jun. 6, 2005)(finding that plaintiff's allegations of harassment could not establish a *prima facie* case of race discrimination where the plaintiff presented no evidence that the harassment was motivated by her race).

Concord EFS, Inc., Civ. A. No. 03-599, 2004 WL 1636970 *6 (D. Del. Jul. 20, 2004)(holding that the plaintiff had failed to establish a *prima facie* case of discrimination where she could not show any other employee who had engaged in the same misconduct as she but who was not terminated for the misconduct); Knott-Ellis v. Delaware Department of Correction, Civ. A. No. 00-826, 2001 WL 935621 *4 (D. Del. Aug. 31, 2001)(finding that plaintiff's failure to point to similarly situated employees outside her protected class who were treated more favorably defeated his *prima facie* case).

### 2. Hanson Cannot Rebut Lowe's Articulated Reason for Its Request that Ideal Remove Hanson from the Dover Store.

Even if Hanson has presented sufficient evidence to state a *prima facie* case of race discrimination, summary judgment is still warranted because Hanson cannot overcome Lowe's legitimate and non-discriminatory reason for its actions—his violation of Lowe's Recording Policy. Hanson's discrimination claim against Lowe's hinges on his belief that Lowe's acted with discriminatory animus when Myers, with Schreiber's approval, called Leaman, reported that Hanson had recorded a conversation in the Dover store, and requested that Hanson not perform work in the Dover store. Hanson, however, fails to point to any evidence supporting his theory that Myers or Schreiber acted with discriminatory intent.

In examining Hanson's contentions, the question at issue is not whether Lowe's actions and decisions were wise, prudent or competent; the question is whether Lowe's acted with discriminatory animus. Fuentes, 32 F.3d at 765; Ferreri v. Mac Motors, Inc.,

138 F. Supp. 2d 645, 651 (E.D. Pa. 2001)(citations omitted).  As the Third Circuit

explained in an age discrimination case:

> [W]e do not sit as a super-personnel department that reexamines
> an entity's business decisions.  No matter how medieval a firm's
> practices, no matter how high-handed its decisional process, no
> matter how mistaken the firm's managers, [discrimination laws
> do] not interfere.  Rather, our inquiry is limited to whether the
> employer gave an honest explanation for its behavior.

Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326, 332 (3d Cir. 1995)(quoting McCoy v.

WGN Continental Broadcasting Co., 957 F.2d 369, 373 (7th Cir. 1992)).

Based on Vazquez's phone call to Myers, Lowe's reached the following

conclusions:  (1) Hanson had recorded a conversation with Vazquez while both were in

the Dover store; and (2) Hanson's actions violated Lowe's policy prohibiting the

recording of employees in the Dover store.  In light of these events, Lowe's called

Hanson's supervisor at Ideal, relayed the information about Hanson's actions, and

requested that Ideal no longer assign Hanson to service the Dover store.

After Myers called Ideal, there was no further contact between Ideal and Lowe's

regarding Hanson.  Ideal did not request to speak with Vazquez or listen to the tape on

which Hanson had recorded Vazquez.  No one from Ideal called Lowe's to state that

Hanson had denied taping the conversation or to request an investigation.

Hanson's challenge to Lowe's legitimate, nondiscriminatory reason for calling

Ideal — that Lowe's incorrectly concluded that he had acted inappropriately — fails.

The question before this Court is not whether Hanson in fact knowingly and intentionally

recorded Vazquez, but whether Lowe's honestly believed that he had done so.  Keller v.

21

Orix, 130 F.3d 1101, 1109 (3rd Cir. 1997)(noting that the issue to be decided when determining the validity of the employer's reason for the challenged employment action is not whether the employer's decision was wrong or mistaken, but whether it was so plainly wrong that it could not have been the employer's real reason). Hanson cannot seriously contend that Lowe's did not honestly believe that he had engaged in conduct contrary to Lowe's policies, particularly in light of the fact that Hanson now admits that he did indeed record his conversation with Vazquez.

In Braithwaite v. Timken Company, 258 F.3d 488, 494 (6th Cir. 2001), the Sixth Circuit was confronted with an employee's claim that the investigation leading to his termination was inadequate and, therefore, demonstrated that the employer could not have "honestly believed" in the conclusions derived from the investigation. The evidence before the Sixth Circuit revealed that following the plaintiff's altercation with another employee, the employer conducted an investigation and obtained written statements from several employees who had witnessed the altercation. Id. at 494. In reviewing the plaintiff's claims, the *Braithwaite* court summarized the applicable standard:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

Id. (citing Smith v. Chrysler, 155 F.3d 799, 807 (6th Cir. 1998)). The Sixth Circuit applied this standard to the facts before it and determined that the employer had reason to believe that the plaintiff had violated company policy. Id. at 495.

Likewise, in <u>Adams v. Wal-Mart Stores, Inc.</u>, 324 F.3d 935, 937 (7th Cir. 2003), the plaintiff claimed that her employer terminated her because she was African-American, and not because it believed that she had stolen money from a co-worker. The court noted that it was not sufficient for the plaintiff "to show that the investigators might have made a mistake in their conclusion." <u>Id.</u> at 940. Rather, it was the plaintiff's duty to produce evidence showing that the employer did not genuinely believe that the plaintiff had stolen the money. <u>Id.</u> Not only was the employee unable to meet this burden, but the employer was able to show that its belief that the plaintiff had stolen money was supported by two written statements of co-workers. <u>Id.</u> <u>See also</u>, <u>Vakharia v. Swedish Covenant Hospital</u>, 190 F.3d 799, 810 (7th Cir. 1999)(defendant entitled to judgment because plaintiff failed to show that termination decision was not based on honest belief that plaintiff's performance was substandard).

Summary judgment is warranted here because Lowe's honestly (and correctly) believed Hanson had recorded Vazquez. Although Hanson may suggest that Lowe's should have asked for his version of events, it is undisputed that Hanson was not employed by Lowe's, and further investigation would have confirmed what Hanson admitted in his deposition—that he had tape recorded a conversation in violation of Lowe's policy. Lowe's acted appropriately by informing Ideal of the events and allowing Ideal to handle the incident as it deemed necessary. Further, Lowe's had no reason to disbelieve Vazquez's statement, particularly in light of Vazquez's admission that his recorded comments were inappropriate. As stated by the Fifth Circuit:

> . . . even an incorrect belief that an employee's
> performance is inadequate constitutes a legitimate,

> nondiscriminatory reason. We do not try in court the
> validity of good faith beliefs as to an employee's
> competence. Motive is the issue.

Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991)(citations omitted). Here, the validity of Lowe's good faith belief that Hanson violated Lowe's policy by recording Vazquez is not at issue. Rather, the issue is Lowe's motive. Fuentes at 762. Since there is no evidence that race was a motivating factor when Myers called Leaman, Hanson cannot maintain his race discrimination claim against Lowe's.

**D.    Hanson Cannot Demonstrate Gender Discrimination.**

In the event Lowe's is treated as an employer under the Delaware Discrimination Act, Lowe's remains entitled to summary judgment on such claims because Hanson cannot demonstrate that Lowe's acted with discriminatory animus.[16] In analyzing claims under the Delaware Discrimination Act, courts apply the same burden-shifting framework utilized for Title VII claims. See Rizzitiello v. McDonald's Corp., 868 A.2d 835, 829-30 (Del. 2005). As Hanson claims that he was subject to disparate treatment because he is male and Asian-American, the McDonnell Douglas analysis applies.

Under McDonnell Douglas, Hanson must first establish a *prima facie* case of gender and/or national origin discrimination. Thus, to defeat summary judgment, a plaintiff must first establish by a preponderance of the evidence each element of a *prima facie* case of discrimination: (1) membership in a protected class; (2) qualification for the position in question; (3) adverse employment action; and (4) circumstances surrounding the action which give rise to an inference of discrimination. Jones, 198 F.3d 403 at 410-

---

[16] In its Section 1981 analysis, Lowe's has already detailed the reasons why Hanson's race/national origin claim fails. For purposes of brevity, Lowe's incorporates that legal argument to its analysis of Hanson's race and national origin claims under the Delaware Discrimination Act.

11. If Hanson puts forth a *prima facie* case, the burden of production then shifts to Lowe's to articulate a legitimate, non-discriminatory reason for its actions.

In order to survive summary judgment once Lowe's produces a legitimate and non-discriminatory reason for its actions, Hanson must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve Lowe's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Lowe's action." Fuentes, 32 F.3d at 764. Hanson's gender discrimination claim fails both at the initial *prima facie* stage and at the pretext stage.

        **a.**    **Hanson Fails to Establish a *Prima Facie* Case of Gender Discrimination.**

It is undisputed that Hanson can establish the first three elements of a *prima facie* case. Hanson's case falls apart, however, at the fourth element. Hanson cannot show that Lowe's request that he be removed from the Dover store was motivated by his gender. In support of his gender claim, Hanson simply recites that he is male and Schreiber and Myers are women:

> A:    . . . . I have to look at it from the sex perspective because they are both females and they are both from the same Lowe's store in Louisiana. They know each other. . . . I have no other choice, but to look at it as sex, because, like I said, they are both females and I don't know what it is about what I have done . . .
>
> Q:    Because they are both female?
>
> A:    Because they are both female and other female vendors weren't getting treated the way I was.

(See Hanson dep., Exhibit A, pp. 286-89 (A73)).

Further, Hanson's testimony contradicts his claims, as it demonstrates that Schreiber and Myers did not treat males in general poorly:

> Q:    Were there other male vendors who were treated—were there
> other male vendors?
> A:    Yes, sir.
> Q:    How were they treated, as badly as you?
> A:    They were treated great, they were left alone.

(See Hanson dep., Exhibit A, pp. 286-89 (A73)). Hanson's testimony proves that Schreiber and Myers did not possess discriminatory animus towards males. Although Hanson points to numerous difficulties he had with Schreiber and Myers, none of his evidence indicates that the difficulties were the result of his gender. To the contrary, Hanson admits that numerous employees and vendors, male and female alike, had the same difficulties with Schreiber and Myers. (See Hanson dep. Exhibit A, pp. 58-62, 69-72, 98-102 (A16-19, A26-27)). In the absence of evidence that similarly situated females were treated more favorably, Hanson cannot establish a *prima facie* case and his claim fails. See Edwards, 2004 WL 1636970 at *6; Knott-Ellis, 2001 WL 935621 at *4.

### b.    Hanson Presents No Evidence of Gender Animus.

Even if Hanson were to establish a *prima facie* case of gender discrimination, his claim would still fail because he cannot show that Lowe's decision to call Jeremy Leaman, report that Hanson had violated Lowe's company policy and request that Hanson not service the Dover store, was motivated by his gender. To defeat summary judgment, Hanson cannot merely show that Lowe's decision was wrong or mistaken. Rather, "he must demonstrate such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." The plaintiff must not simply establish that the employer's reason was wrong, but that it was so plainly wrong that it could not have been the employer's real reason. Keller, 130 F.3d at 1109. Hanson cannot do this.

As noted in Section III. B., Hanson has already conceded that he violated Lowe's policy when he tape recorded Vazquez. Significantly, Hanson also conceded the reasonableness of Myers' conclusion that he had recorded Vazquez. (See Hanson dep., Exhibit A, pp. 373-74 (A94-95)). For these reasons, Hanson cannot successfully claim that Lowe's request that he not service the Dover store was not legitimate, and he is unable to survive summary judgment under the first prong. See Fuentes, 32 F.3d at 764.

To survive summary judgment under the second prong, Hanson must identify evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that discrimination was a motivating or determinative factor in Lowe's actions. Simpson v. Kay Jewelers, Division of Sterling, Inc., 142 F.3d 639, 644-45 (3d Cir. 1998). Hanson has not come forward with any evidence that would lead a reasonable person to believe that his gender was a motivating factor in Myers' discussion with Leaman. He has adduced no conduct, comments or other evidence that Myers and Schreiber harbored gender animus. Hanson can point to no female vendors who Lowe's concluded had violated its Recording Policy and were allowed to continue servicing the Dover store. All Hanson has to back his gender discrimination claim is the fact that he is male and that, like other people both male and female, he had negative

interactions with Schreiber and Myers. Without more than his own speculations, Hanson's gender discrimination claim fails.

Notably, when asked directly why he believed his gender played a role in how he was treated by Lowe's employees, Hanson responded, "I will never know what it is with Linda and Yvette that this—they always gave me a hard time . . . I have no other choice but to look it as sex . . . they are both females . . ." (See Hanson dep., Exhibit A, pp. 286-88 (A73)). Hanson's evidence constitutes mere conclusory allegations and assumptions and is insufficient to defeat summary judgment. See Momah v. Albert Einstein Medical Center, 978 F. Supp. 621, 631 (E.D. Pa. 1997)("It is well settled that plaintiff's own belief or feeling that he was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law"). Further, Hanson's continued testimony that other male vendors were treated "great" demonstrates a complete lack of animus against men by Schreiber and Myers. (See Hanson dep., Exhibit A, p. 289 (A73)). The record evidence compels summary judgment on Hanson's gender discrimination claim.

### E.    Hanson's Retaliation Claim Fails

Hanson also claims that Lowe's report to Ideal that he had recorded conversations and its request that he no longer service the Dover store were retaliation for Hanson's December 3, 2003 complaint of harassment by Schreiber. To prove retaliation under Section 1981,[17] Hanson must establish the following: (1) he engaged in a protected activity; (2) Lowe's took an adverse employment action after or contemporaneously with

---

[17] Hanson has asserted retaliation claims against Lowe's under both Section 1981 and the Delaware Discrimination Act. As discussed in Section IV.B., the Delaware Discrimination Act does not apply to the relationship between Lowe's and Hanson. Further, Lowe's analysis with regard to Hanson's Section 1981 retaliation claim is equally applicable to his state law claim against Lowe's. Rizzitiello, 868 A.2d at 829-30.

Hanson's protected activity; and (3) a causal link exits between Hanson's protected activity and the adverse employment action. <u>Abramson v. William Patterson College of N.J.</u>, 260 F.3d 265, 286 (3d Cir. 2001). If Hanson satisfies this initial burden, then Lowe's is required to state a legitimate, non-retaliatory reason for its report to Ideal and its request that Hanson not be placed in the Dover store. <u>See</u> <u>Weston v. Commonwealth of Pennsylvania</u>, 251 F.3d 420, 430 (3d Cir. 2001). Hanson is then charged with demonstrating that the proffered reason is pretext. <u>Id.</u> A review of the record evidence shows that Hanson cannot prove his retaliation claim.

First, Hanson's complaint against Schreiber does not constitute protected activity because his complaint was that Schreiber made "smart alec" comments to him, made his work environment unpleasant, and stressed him. (<u>See</u> Hanson dep., Exhibit A, pp. 260-64 (A66-67)). Hanson does not recall mentioning that he believed Schreiber's actions were directed at him because of his race or gender. (<u>See</u> Hanson dep., Exhibit A, pp. 262-64 (A67)). Complaining that someone makes your job difficult, without more, does not constitute protected activity. Second, even if Hanson's December 3 complaint is considered protected activity, Hanson's recording of Vazquez is an intervening act that defeats any causal connection.[18]

---

[18] Further, there is no evidence that Schreiber and Myers were ever aware that Hanson engaged in a protected activity. The Customer Care Line Fax Incident, which was the only knowledge Myers or Schreiber could have had of any complaint by Hanson, indicated a generalized complaint of unfair treatment only. Because Myers and Schreiber were unaware of any protected activity, they could not have retaliated against Hanson. <u>See</u> <u>Cuffee v. The Dover Wipes Co.</u>, 334 F. Supp. 2d 565, 575-76 (D. Del. 2004) (dismissing retaliation claim where there was no evidence that defendant knew of protected activity).

1.    **Hanson Did Not Engage in Protected Activity.**

Hanson's retaliation claim against Lowe's is based on his December 3, 2003 call to Lowe's Customer Care Line.  As reported, the Customer Care Line call indicated that Hanson constantly had run-ins with Schreiber.  According to Hanson, Schreiber made snide comments, called him boy and told him it was about time he got to work.  Hanson further reported that he had tried to speak to Schreiber about this alleged constant mistreatment, but that Schreiber "blew him off."  (See Customer Care Incident Fax, Exhibit H (205-07)).  Hanson did not recall reporting that he believed that Schreiber's conduct was because of his race and/or his gender.  (See Hanson dep., Exhibit A, pp. 262-64 (A67)).

The Third Circuit, in Barber v. CSX Distribution Services, 68 F.3d 694 (3d Cir. 1995), provided the district courts with guidance in determining what conduct constitutes a "protected activity" for purposes of a retaliation claim.  The plaintiff in the Barber case had sent a letter to the defendant's human resources department questioning the reason why he was passed over for a promotion.  Specifically, the plaintiff wrote, " . . . In view of my 21 years of experience . . . I am quite puzzled as to why the position was awarded to a less qualified individual. . . ."  Id. at 697.  Shortly after sending this letter, the plaintiff's supervisor called him into the office and expressed disappointment at the plaintiff's complaint.  Id.  Several months later, the plaintiff was laid off.  Id.

The district court granted the defendant's motion for summary judgment on the plaintiff's retaliation claim, concluding that the plaintiff had failed to demonstrate that he had engaged in a protected activity.  Id. at 701.  In affirming the district court's dismissal

of the retaliation claim, the Third Circuit relied on the fact that the plaintiff's complaint did not "specifically complain" about discrimination. Id. The Third Circuit explained that the plaintiff's letter was "just too vague." Id. at 702. Although the Third Circuit agreed that the plaintiff's letter made clear that he had been treated unfairly, it did not explicitly or implicitly allege that age was the reason for the alleged unfairness. Id. Rather, the plaintiff's letter was more akin to a general complaint of unfairness, and such a complaint is not a protected activity for purposes of discrimination statutes. Id.

In Cuffee v. The Dover Wipes Company, the court granted summary judgment to the defendant on the plaintiff's retaliation claim because the plaintiff had failed to demonstrate that he actually complained about discrimination. 334 F. Supp. 2d 565, 575 (D.Del. 2004). As the court pointed out, "[p]rotected activities include charges of discrimination or complaints about discriminatory employment practices." Id. The Cuffee plaintiff had complained that he did not believe it was fair that he was denied a raise. Id. Like Hanson, the Cuffee plaintiff did not make any express complaint about discriminatory activity by defendants. The court held that absent such an express statement, the plaintiff's complaint to his manager could not be considered protected activity. Id. Similarly, because Hanson only complained of mistreatment by Schreiber, and did not link the mistreatment to his race or gender, his complaint cannot be considered a protected activity and his retaliation claim fails. See also, Adams v. Commonwealth of Pennsylvania, Civ. A. No. 03-1994, 2005 WL 851339 (E.D. Pa. Apr. 8, 2005)(explaining that a general complaint of unfair treatment does not translate into a charge of illegal discrimination, and is not protected conduct)).

2.    **Hanson's Act of Recording Vazquez Is an Intervening Act that Defeats Any Presumption of Retaliation.**

Hanson's attempt to shield his inappropriate behavior by pointing to his December 3, 2003 complaint is unconvincing. Hanson seeks to avoid the consequences for his violation of Lowe's policy by hiding behind his internal complaint to Lowe's. However, nothing that Hanson said or did before January 23, 2004 changes the fact that Hanson recorded a conversation he had with a Lowe's employee in violation of Lowe's policies. Hanson tries to avoid culpability for his conduct by shifting his story. First, Hanson insisted that he never recorded any conversations in the Lowe's store. When confronted with the actual recording, however, Hanson changed his story and asserted that the recording was "unintentional."[19] Still later, Hanson claimed that Vazquez was aware of, and did not object to, the recording, which necessarily implies that Hanson knew that he was recording the conversation and the recording was intentional. Regardless of Hanson's excuses, the fact remains that Hanson violated Lowe's policy by recording a conversation with Vazquez.

Although temporal proximity between the protected activity and the adverse action is a considered factor in a retaliation claim, temporal proximity alone does not establish a genuine issue of fact as to retaliation where, as here, there is an intervening act causing the adverse action. Campbell v. Abercrombie & Fitch, Co., Civ.A.No. 03-3159, 2005 WL 1387645 * 8-9 (D.N.J. Jun. 9, 2005). In Campbell, the court granted summary judgment on the plaintiff's retaliation claim because the plaintiff's unauthorized and

---

[19] Hanson also testified that he used the recorder for business purposes, such as recording product notes. Noticeably absent from the recording obtained from Vazquez is any business-related content.

inappropriate conduct was an intervening act that contradicted a retaliation claim. The plaintiff in Campbell had complained of discrimination about six weeks before his termination. Id. at *9. The court noted, however, that in between the complaint and the termination, the plaintiff had conducted an unauthorized investigation, which was the stated reason for his termination. Id. The court found that this evidence defeated any causal link between the protected activity and the adverse action. Id. See also, Tasadfoy v. Ruggiero, 365 F. Supp. 2d. 542 (S.D.N.Y. 2005)(concluding that any inference of causation created by temporal proximity is defeated where there is an intervening causal event that happened between the alleged protected activity and the adverse action).

Regardless of any complaint that Hanson made, he admitted to the misconduct that led Lowe's to ask that he not be allowed in its Dover store again. Consequently, he cannot establish any causal link between his alleged protected activity and Lowe's request that he not return.

### F.    Hanson Cannot Show that Lowe's Slandered Him.

Hanson's slander *per se* claim against Lowe's is grounded solely in his belief that Carlos Vazquez, a non-exempt employee, bragged to two people that Hanson was terminated because Vazquez had reported that Hanson tape recorded a conversation in Lowe's store. Assuming that Vazquez made these statements, the evidence is clear that there was no slander. First, the comment that Hanson attributes to Vazquez is substantially true, and thus Lowe's has an absolute defense to Hanson's slander *per se* claim. Further, Vazquez was not acting within the scope of his employment when he made the comment and, therefore, Lowe's cannot be held liable for his conduct.

1.    **Requirements of Slander *Per Se* Claim.**

To state a claim of slander *per se* under Delaware law, Hanson must establish the following elements of a defamation claim:  (1) that Lowe's made a defamatory statement; (2) concerning Hanson; (3) the statement was published; and (4) a third party would understand the character of the communication to be defamatory.  Doe v. Cahill, 884 A.2d 451, 463 (Del. 2005)(citing Read v. Carpenter, 1995 WL 945544, *2 (Del. Sp. 1995)).  Although defamation claims typically require proof of damages, claims of slander *per se* do not.  See Delaware Express Shuttle, Inc., v. Older, Civ. A. No. 19596, 2002 WL 31458243 *21 (Del.Ch. Oct. 23, 2002).  Slander *per se*, however, is limited to four particular categories of defamation:  (1) maligning a person in his or her trade or business; (2) imputing a crime of moral turpitude; (3) implying a person suffers from a loathsome disease; and (4) imputing unchastity to a woman.  Id.  After a plaintiff establishes the requisite elements of a slander *per se* claim, the defendant can assert truth as an absolute defense.  Id.

2.    **Because the Alleged Slanderous Statement Was True, By Definition It Cannot Be Defamatory, and Hanson's Slander *Per Se* Claim Fails**

Under Delaware law, a statement cannot be defamatory if it is substantially true. See Martin v. Widener University School of Law, Civ. A. No. 91C-03-255, 1992 WL 152540 *11 (Del. Sup. Jun. 17, 1992).  A statement is substantially true if the alleged statement "is no more damaging to plaintiff's reputation in the mind of the average reader than a truthful statement would have been."  Id.  Thus, the question is whether the "gist" of the statement was true.  Id.

Hanson alleges that Vazquez bragged to two merchandisers that Vazquez got Hanson fired by giving a tape to Myers. (See Hanson dep., Exhibit A, p. 389 (A98)). Leaving aside for the sake of argument the fact that Hanson's basis for the slander claim is purely hearsay, Lowe's cannot be liable for slander because Ideal actually did terminate Hanson because of the recording that Vazquez gave to Lowe's. Even Hanson does not dispute this fact. (See Hanson dep., Exhibit A, pp. 391-92 (A99)). Accordingly, the absolute defense of truth applies and Hanson's slander claim fails.

> 3. **Lowe's Did Not Make the Alleged Defamatory Statement Because the Communication At Issue Is Not Attributable To Lowe's.**

Even if Vazquez's statement were not substantially true, Lowe's still could not be liable to Hanson because Vazquez's alleged statement was not attributable to Lowe's. Since Vazquez's conduct in communicating the alleged statement to Ramirez and Folder was outside the scope of his employment, Lowe's is not liable for the communication. The law is clear that Lowe's cannot be liable for the alleged conduct of Vazquez unless Hanson establishes that Vazquez was acting within the scope of his employment at Lowe's when he made the alleged defamatory statement. See Drainer v. O'Donnell, Civ. A. No. 94C-08-062, 1995 WL 338700 *4 (Del. Super. Jul. 28, 1995). Delaware courts follow the Restatement (Second) of Agency § 228 (1957) to determine whether an employee was acting within the scope of his employment when the tortious incident occurred. Screpesi v. Draper-King Cole, Inc., Civ. A. No. 95C-05-029, 1996 WL 769344 *3-4 (Del. Super. Dec. 27, 1996). Thus, conduct of an employee is within the scope of his employment when: (1) it is of the kind the employee is employed to perform; (2) it

occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer.  Likewise, conduct is not in the scope of employment if it is different than the conduct the employee is authorized to perform, it is far beyond the time and space of work, or is too far removed from serving the purposes of the employer.  Id.

Applying the above framework to the present facts shows that Vazquez was not acting within the scope of his employment at Lowe's when he supposedly discussed Hanson's employment status.  First, there is no indication that bragging about why a person was terminated by a vendor of Lowe's was the kind of conduct that Vazquez was hired to perform.  Hanson was not an employee of Lowe's and, therefore, no Lowe's employee, and certainly not Vazquez, would have input or involvement in Ideal's decision to terminate Hanson's employment.  Further, Vazquez is not authorized to terminate a Lowe's employee, let alone a Lowe's contractor, and, therefore, his statements as to why a non-Lowe's employee was terminated are clearly outside the scope of his job responsibilities.  As Hanson explained, his information regarding Vazquez's statement is second-hand and Hanson has few details about the alleged defamatory statement.  There is no evidence that Vazquez's purported bragging was motivated in any way to serve Lowe's.  In fact, all evidence is to the contrary.  Accordingly, even if Vazquez had slandered Hanson, Lowe's would not be liable for such conduct.

**G.    Hanson Cannot Show Tortious Interference with Contract.**

    1.    **Delaware Does Not Recognize a Claim for Tortious
Interference with At-Will Employment.**

Hanson's claim of tortious interference with contractual relations fails because

Hanson was an at-will employee.  In <u>Park v. Georgia Gulf Corp.</u>, Civ. A. No. 91-569,

1992 WL 714968, *9 (D. Del. Sept. 14, 1992), this Court held, "where the contract

ostensibly interfered with is an at-will employment contract . . . the cause of action for

tortious interference does not lie."  (citing <u>Rizzo v. E.I. DuPont de Nemours & Co.</u>, No.

86C-JL88, slip Op. at 7-8 (Del. Super. 1989)).  Hanson's tortious interference claim

against Lowe's seeks damages for Lowe's purported interference with Hanson's

employment with Ideal.  It is undisputed that Hanson was an at-will employee of Ideal.

(<u>See</u> Ideal Employee Handbook, Exhibit C).  Due to that status, Hanson cannot pursue a

tortious interference claim against Lowe's.

    2.    **Lowe's Actions Were Justified.**

Assuming this Court concludes that Hanson can pursue a tortious interference

claim against Lowe's, Lowe's remains entitled to summary judgment because Hanson

cannot establish the requisite elements of a tortious interference claim.

The elements of a claim for tortious interference with contractual relations are:

(1) existence of a contract, (2) defendant's knowledge of the contract, (3) an intentional

act that is a significant factor in causing the breach of the contract, (4) lack of

justification in causing the breach, and (5) injury.  <u>See</u> <u>Cantor Fitzgerald, L.P. v. Cantor</u>,

724 A.2d 571, 584, 1998 Del. Ch. Lexis 120 (1998).  Here, even though Lowe's actions

in communicating Hanson's conduct to Leaman and requesting his removal from the

Dover store were intentional, it was not tortious interference because Lowe's actions were justified.

To determine whether an act that interferes with a contract is proper, the Delaware courts apply the factors set forth in the Restatement (Second) of Torts § 767 (1979). These factors are:  (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties.  Hursey Porter & Associates v. Bounds, Civ. A. No. 93C-01-901, 1994 WL 762670 * 13-14 (Del. Super. Dec. 2, 1994)(quoting Restatement (Second) of Torts § 767).  In summary, to determine the appropriateness of interference with another's contract, the inquiry is "whether pursuit of self-interest justified one in inducing another to breach a contract in the particular circumstances. . . ."  Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del.Ch. 1987).   For example, directing business policy has been acknowledged as a justification for interference with another's contract.  See Bowl-Mor Co., Inc. v. Brunswick Corp., 297 A.2d 61, 66 (Del.Ch. 1972)(citing Restatement, Torts § 771).

Application of the above factors to Lowe's actions shows that Lowe's did not tortiously interfere with Hanson's employment with Ideal.  The procedures Lowe's used in communicating Hanson's conduct were appropriate.  Myers informed Leaman, Hanson's supervisor, of the information she received from Vazquez and explained that

Hanson's actions violated Lowe's policy. Myers then requested that Hanson not service the Dover store. Myers' conduct was in accordance with Lowe's prohibition of recording, which permits termination of Lowe's employees for such conduct. Myers' motive in contacting Leaman was to enforce Lowe's own company policies. Myers' interest in upholding Lowe's policies was legitimate and advanced the privacy interests of Lowe's employees and customers. Notably, Myers did not request or seek Hanson's termination of employment with Ideal. Thus, there is no basis for contending that Myers' actions were inappropriate.

As discussed above, the majority of the factors direct a finding that Lowe's actions were justified. Because Lowe's alleged interference with Hanson's employment with Ideal was justified, Hanson cannot pursue a tortious interference with contract claim against Lowe's.

## V.    CONCLUSION

Because Plaintiff William Hanson failed to produce evidence sufficient for a jury to find in his favor on any of his claims against Lowe's, Defendant Lowe's Home Centers, Inc. respectfully requests this Court enter summary judgment in its favor on each claim asserted against it by Hanson.

**GORDON, FOURNARIS & MAMMARELLA, P.A.**

**/s/ Peter M. Sweeney**

Date: December 29, 2005

Peter M. Sweeney, Esquire (DSB #3671)
1925 Lovering Avenue
Wilmington, DE   19806
Telephone:  (302) 652-2900
Facsimile:  (302) 652-2348
 psweeney@gfmlaw.com

OF COUNSEL:
William J. Leahy, Esquire (PA Bar #80340)
Michele Halgas Malloy, Esquire (PA Bar #88456)
Littler Mendelson, P.C.
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, PA   19102
Telephone:  267-402-3000

Attorneys for Defendant Lowe's Home Centers, Inc.

## CERTIFICATE OF SERVICE

I, Peter M. Sweeney, hereby certify that on the 29th day of December 2005, a true

and correct copy of the foregoing **Defendant Lowe's Home Centers, Inc.'s Opening**

**Brief in Support of Their Motion for Summary Judgment** was served via electronic

filing and first class mail, upon:

William D. Fletcher, Esquire
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, DE  19903-0497

Lucretia Clemons, Esquire
Ballard Spahr Andrews & Ingersoll LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599

William M. Kelleher, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 North Market Street, 12th Floor
Wilmington, DE   19801


**/s/ Peter M. Sweeney**

Peter M. Sweeney, Esq. (DSB #3671)
psweeney@gfmlaw.com