## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WILLIAM HANSON, III                              :
                                                 :
      Plaintiff,                       :
                                                 :
v.                                               :        CIVIL ACTION
                                                 :        NO. 05-0046 (JJF)
LOWE'S HOME CENTERS, INC., et al.                :
                                                 :
      Defendants.                     :
                                                 :

---

### BRIEF AND APPENDIX OF DEFENDANT
### DDP HOLDINGS, INC. IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

---

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4460

OF COUNSEL:
David S. Fryman
Lucretia C. Clemons
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

DMEAST #9422810 v2

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS ................................................ 1
II.     SUMMARY OF ARGUMENT ................................................................. 1
III.    STATEMENT OF UNDISPUTED FACTS .................................................. 2
        A.    DDP Holdings, Inc. ................................................................... 2
        B.    Plaintiff's Employment History .................................................. 3
        C.    Plaintiff's Call To Lowe's Customer Care Line ............................. 3
        D.    The Events Leading To Termination ............................................ 4
        E.    No Allegations of Discrimination or Harassment Against DDP Employees ........ 5
        F.    Allegations of Discrimination and Harassment By Lowe's Employees ............. 6
IV.     ARGUMENT ..................................................................................... 6
        A.    Summary Judgment Standard ...................................................... 6
        B.    Plaintiff Cannot State A Claim For Discrimination Under the Delaware
              Discrimination Act ................................................................... 7
        C.    Plaintiff Cannot Establish That He Was Subject To Disparate Treatment
              Discrimination Based On His Sex, Race Or National Origin .................. 8
              1.    Plaintiff Cannot Establish a *Prima Facie* Case of Discriminatory
                    Termination ................................................................... 9
              2.    Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant
                    Has Articulated Non-Discriminatory Reasons for Its Actions .......... 10
              3.    Plaintiff Cannot Demonstrate That Defendant's Articulated Reason
                    Was A Pretext For Discrimination ........................................ 11
        D.    Plaintiff Cannot Establish a Claim for Hostile Work Environment ........... 13
              1.    Plaintiff Cannot Establish That He Suffered Intentional
                    Discrimination Because of His Sex, Race or National Origin ........... 14
              2.    The Alleged Harassment Was Not Severe or Pervasive .................. 15
              3.    A Reasonable Factfinder Could Not Find The Alleged Conduct
                    Rose To The Requisite Level Of Objective Severity And
                    Abusiveness ................................................................... 18
              4.    Plaintiff Cannot Establish Respondeat Superior Liability ............... 18
        E.    Plaintiff Cannot Prove A Claim for Retaliation ............................... 21
              1.    Plaintiff Did Not Engage In Protected Activity .......................... 22
              2.    Plaintiff Cannot Establish A Causal Connection Between His
                    Alleged Protected Activity And Any Alleged Adverse
                    Employment Action ........................................................... 23
              3.    Defendant Has Articulated A Non-Discriminatory Reason for
                    Terminating Plaintiff's Employment and Plaintiff Has Not
                    Established That DDP's Explanation for Its Decision Is A Pretext
                    for Unlawful Retaliation .................................................... 24
V.      CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adkins v. Shoe Show of Rocky Mount, Inc.*, No. 03-406, 2005 WL 662664 (D.Del. March 16, 2005)............................................................................................................12

*Anderson v. Mcintosh Inn*, 295 F. Supp. 2d 412, 420 (D.Del. 2003). ................................9

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) ......................................14

*Barber v. CSX Distributing Services*, 68 F.3d 694 (3d Cir. 1995) ...................................22

*Baker v. Boeing Helicopters*, No. 1-3565, 2004 WL 1490358 (E.D.Pa. June 30, 2004)............................................................................................................................20

*Bishop v. National R.R. Passenger Corp.*, 66 F. Supp. 2d 650 (E.D.Pa. 1999) ...............17

*Blackburn v. United Parcel Service*, 179 F.3d 81 (3d Cir. 1999).......................................11

*Bonora v. UGI Utilities, Inc.*, No. 99-5539, 2000 U.S. Dist. LEXIS 15172 (E.D.Pa. Oct. 18, 2000)................................................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................6

*Crist v. Focus Homes, Inc.*, 122 F.3d 1107 (8th Cir. 1997)...............................................19

*DeCesare v. National R.R. Passenger Corp.*, No. 98-3851, 1999 WL 330258 (E.D.Pa. May 24, 1999) ..............................................................................................17

*Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148 (2003)..........................................................8

*Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3d Cir. 1990)....................................16

*Folkerson v. Circus Circus Enterprise, Inc.*, 107 F.3d 754 (9th Cir. 1997)......................19

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ..................................................................11

*Gemmell v. Meese*, 655 F. Supp. 577 (E.D.Pa. 1986).........................................................24

*Grande v. State Farm Mutual Automobile Insurance Co.*, 83 F. Supp.2d 559 (E.D.Pa. 2000) ...........................................................................................................15

*Graves v. County of Dauphin*, 98 F. Supp. 2d 613 (M.D.Pa. 2000)..................................19

*Harley v. McCoach*, 928 F. Supp. 533 (E.D.Pa. 1996).......................................................17

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ..........................................................13

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) ...............................................................9

*Igwe v. E.I. DuPont De Nemours and Co., Inc.*, No. 03-839, 2005 WL 196577 (D. Del. Jan. 26, 2005) ..............................................................................................................9

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245 (1st Cir. 1996) ..............................................................................................................7

*Johnson v. Bally's Atlantic City*, 147 Fed. Appx. 284, 286 (3d Cir. 2005) ........................19

*Jones v. United States Postal Service*, No. 02-1449, 2004 WL 1739714 (D.Del. July 21, 2004) ......................................................................................................................12

*Kelly v. Drexel University*, 94 F.3d 102 (3d Cir. 1996) ......................................................23

*Kenney v. Footlocker Worldwide*, 55 Fed. Appx. 35, 37 (3d Cir. 2002) ...........................23

*Kerrison v. Kane Community Hospital*, Civ. A. No. 98-349, 2000 WL 33223084 (W.D.Pa. 2000) ..............................................................................................................17

*Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir. 1997) ..........................................................19

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999) ......................................14, 20

*Lawrence v. National Westminster Bank*, 98 F.3d 61 (3d Cir. 1996) ..................................6

*Lewis v. University of Pittsburgh*, 725 F.2d 910 (3d Cir. 1984) ..........................................8

*Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998) .............................................19

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) ..................................................8

*Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir.1995) ..........................................................10

*Montandon v. Farmland Industrial*, 116 F.3d 355 (8th Cir. 1997) ...................................14

*Moore v. Grove North America, Inc.*, 927 F. Supp. 824 (M.D.Pa. 1996) ..........................14

*Oncale v. Sundner Offshore Services, Inc.*, 523 U.S. 75 (1998) .........................................16

*Phillips v. Merchants Insurance*, 3 F. Supp. 2d 204 (N.D.N.Y. 1998) ..............................14

*Pivirotto v. Innovative System, Inc.*, 191 F.3d 344 (3d Cir. 1999) ......................................9

*Reyes v. McDonald Pontiac-GMC Truck, Inc.*, 997 F. Supp. 614 (D.N.J. 1998)..............14

*Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848 (1st Cir. 1998)...........................19

*Sabo v. Lifequest, Inc.,* No. Civ. A. 95-3757, 1996 WL 583169 (E.D.Pa. Oct. 8, 1996) ..........................................................................................................................19

*Sarko v. Penn-Del Directory Co.*, 968 F. Supp. 1026 (E.D.Pa. 1997) ................................7

*Sarullo v. United State Postal Service*, 352 F.3d 789 (3d Cir. 2003) ................................24

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998) ...............................7

*Seldomridge v. Uni-Marts, Inc.*, No. 99-496GMS, 2001 U.S. Dist. LEXIS 9492 (D. Del. July 10, 2001) ...............................................................................................16

*Simpson v. Kay Jewelers*, 142 F.3d 639 (3d Cir. 1998)..............................................11, 12

*Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681 (E.D.Pa. 1993) ............................................7

*Sonja J. Bray v. L.D. Caulk Dentsply International*, No. 98-441, 2000 WL 1800527 (D.Del. July 21, 2000) ...................................................................................9

*St. Mary's Honor  Center v. Hicks*, 509 U.S. 502 (1993) ...............................................8, 11

*Summer v. United States Postal Serv.*, 899 F.2d 203 (2d Cir. 1990)...........................22, 23

*Sylvester v. Unisys Corp.*, No. 97-7488, 1999 U.S. Dist. LEXIS 3607 (E.D.Pa. Mar. 25, 1999) ..............................................................................................................12

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ........................8

*Turner v. PNC Bank*, No. 99-504, 2003 WL 225080392 (D.Del. November 3, 2003) ...........................................................................................................................9

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ...........................................................7

*Waite v. Blair, Inc.*, 937 F. Supp. 460 (W.D.Pa. 1995) ....................................................14

*Walton v. Mental Health Association of Southeastern Pa.*, 168 F.3d 661 (3d Cir. 1999) .........................................................................................................................14

*Weston v. Commw. of Pa.*, 251 F.3d 420 (3d Cir. 2001) ...................................................21

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) ..........................................21, 22

## STATE CASES

*Rizzitielo v. McDonald's Corp.*, 868 A.2d 825 (Del. 2005)..................................................8

## FEDERAL STATUTES

42 U.S.C. § 1981 ("Section 1981")......................................................................................1

29 C.F.R. § 1604.11(e)(1997).............................................................................................19

Fed. R. Civ. P. 56(c) .............................................................................................................6

## STATE STATUES

19 Del. C. § 710 et. seq.......................................................................................................1, 7

Del. C. § 710(6) .....................................................................................................................7

## I.    NATURE AND STAGE OF PROCEEDINGS

This is an employment discrimination case. On December 28, 2004, Plaintiff William Hanson filed his complaint, alleging that DDP Holdings, Inc. ("DDP"), his former employer, and Lowe's Home Centers, Inc. ("Lowe's"), which operates the retail stores where he worked, discharged him, subjected him to a hostile work environment, and retaliated against him because of his race and national origin in violation of the Delaware Discrimination Act, 19 Del. C. § 710 et. seq. ("DDA") and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff also claims that DDP and Lowe's discharged him and retaliated against him based on his sex and subjected him to sexual harassment in violation of the DDA. Lastly, Plaintiff claims that Lowe's defamed him and tortiously interfered with his employment with DDP. DDP filed its Answer on February 24, 2005. The parties completed written discovery on July 31, 2005.

DDP now moves for summary judgment because, even accepting Plaintiff's version of the facts, Plaintiff cannot establish that DDP discriminated against him on the basis of his sex, race or national origin, subjected him to a hostile work environment or retaliated against him.

## II.    SUMMARY OF ARGUMENT

Plaintiff alleges that two Lowe's employees harassed him and that DDP discriminated and retaliated against him when it terminated his employment. By stark contrast, the record evidence clearly demonstrates that Plaintiff has elevated a trivial personality dispute to the proverbial "federal case." Plaintiff cannot establish any of the requisite elements to succeed on a claim for discriminatory discharge, hostile work environment or retaliation. As detailed below:

- Plaintiff's claims under the DDA fail as a matter of law because Plaintiff cannot dispute that DDP did not employ the requisite number of individuals to be subject to the DDA's coverage;

- Plaintiff's claims for discriminatory termination cannot succeed because he cannot demonstrate that his termination occurred under circumstances that give rise to an inference of discrimination or pretext;

- Plaintiff's harassment claims fail because he cannot establish that: (i) the alleged harassment was based on his sex, race or national origin; (ii) the alleged harassment was "severe and pervasive"; (iii) the alleged harassment would have detrimentally affected a reasonable person in the same position; and (iv) respondeat superior liability exists; and

- Plaintiff's retaliation claims fail because his complaint of unfair treatment by a Lowe's employee did not constitute protected activity, and in any event he cannot establish a causal connection between the alleged protected activity and the termination decision.

For these reasons, summary judgment should be entered in favor of DDP on all of

Plaintiff's claims.

## III.    STATEMENT OF UNDISPUTED FACTS[1]

### A.    DDP Holdings, Inc.

DDP provides merchandising services to the rough plumbing and electrical

departments at Lowe's stores on an exclusive basis throughout the country.[2] (Harris Verification,

Ex. A, at ¶ 2). Between October 2003 and January 2004, DDP employed three individuals in the

State of Delaware. (Woodham Verification, Ex. B, at ¶ 2).

DDP's commitment to fair employment practices is set forth in its employee

handbook. (DDP Handbook, Ex. C). The handbook provides: "Equal Employment Opportunity

---

[1]    For purposes of this motion, DDP has, as it must, resolved all disputed facts in favor of Plaintiff. It, however, reserves its right to dispute certain facts set forth herein.

[2]    DDP provided merchandising services to Lowe's through its subsidiary Ideal Merchandising, Inc., until January 1, 2005. On that date, Ideal Merchandising was dissolved and now operates as a division of DDP. (Ex. A, at ¶ 3).

has been, and will continue to be, a fundamental principle at Ideal Merchandising, where employment is based upon personal capabilities and qualifications without discrimination because of race, color, religion, creed, national origin, ancestry, disability, sex, age, military status or any other status protected by applicable Federal, State or Local laws. This policy of Equal Employment Opportunity applies to all policies and procedures relating to recruitment and hiring, compensation, benefits, termination and all other terms and conditions or employment." (Ex. C, at 1). The handbook also provides that: "[a]ny incidents of harassment must be immediately reported to a manager, Human Resources Department, or other management representative." (Ex. C, at 4-5).

**B.    Plaintiff's Employment History**

On or about October 1, 2003, DDP hired Plaintiff as a merchandiser for the Lowe's stores in Middletown and Dover, Delaware. (Hansen Deposition, Ex. D, at 156, 164-65). Plaintiff's direct supervisor was Jeremy Leaman, a District Manager of DDP. (Ex. D, at 159-60, 164-65). As a merchandiser, Plaintiff was responsible for marketing items in the electrical and rough plumbing departments. (Ex. D, at 162-165). His duties included stocking and organizing shelves, creating product displays and ensuring that items remained in stock. (Id.). As a DDP employee assigned to work in a Lowe's store, Plaintiff was required to adhere to both the guidelines set forth in DDP's handbook as well as the practices, procedures and policies of Lowe's. (Ex. C, at Introduction).

**C.    Plaintiff's Call To Lowe's Customer Care Line**

On or about December 2, 2003, Plaintiff called the Lowe's customer care line to complain about Yvette Schriver, the Store Manager of the Lowe's Dover store. (Ex. D, at 257-62). Shortly after making the call, Plaintiff called his supervisor, Mr. Leaman, and told him that he had called the Lowe's customer care line to complain that Ms. Schriver called him "boy."

(Ex. D, at 434-43). Mr. Leaman told Plaintiff that he should have called him first and that he would look into the matter and call him back. (Id.).

The following day, Mr. Leaman called Plaintiff and reiterated that any issues that Plaintiff encountered should be addressed with Mr. Leaman and not with Lowe's because Plaintiff was an employee of DDP, not Lowe's. (Id.). He also told Plaintiff that he had investigated Plaintiff's complaint and Ms. Schriver denied calling Plaintiff "boy." (Id.) According to Plaintiff, Mr. Leaman then said, in an unserious tone, that the only way Plaintiff could prove that Ms. Schriver had called him "boy" would be to tape record the conversation. (Id.) Mr. Leaman then said "and we're not going to talk about that." Plaintiff testified that he replied, "I am not going to do that." (Id.).

Plaintiff never told Mr. Leaman that he believed he was being treated unfairly because of his sex, race or national origin. (Ex. D, at 443-50). Plaintiff never reported any other issues to Mr. Leaman. (Id.).

**D.    The Events Leading To Termination**

In late January 2004, Linda Myers, Sales Manager of the Dover Lowe's store, called Mr. Leaman to tell him that Plaintiff had tape recorded a conversation with a Lowe's employee without that employee's permission in violation of Lowe's policy.[3] (Myers Deposition, Ex. E, at 40, 43-44). Ms. Myers told Mr. Leaman that because of Plaintiff's conduct, Lowe's no longer wanted Plaintiff to service the Dover store. (Id.).

---

[3]    Specifically, Lowe's policy 413-Prohibition of Recording Equipment Use prohibits any individual from openly or secretly tape recording any conversation that in any way involves the employees of Lowe's in a Lowe's store. (Lowe's Policy 413, Ex. F).

In response to Ms. Myers' report, Mr. Leaman contacted John Woodham, Human Resource Assistant at SPMI[4] and advised him of the report by Ms. Myers. (Leaman Deposition, Ex. B, at ¶ 3). Because DDP is a dedicated vendor to Lowe's, in the event an employee's behavior is such that he is removed from his or her assigned store, DDP has to end the employment relationship. (Ex. B, at ¶ 4). Mr. Woodham directed Mr. Leaman to terminate Plaintiff's employment.[5](Ex. B, at ¶ 5). Mr. Woodham did not know Plaintiff's race or national origin to be Asian or Korean. (Ex. B, at ¶ 6).

Mr. Leaman called Plaintiff on or about January 23, 2004 and told him that, because Lowe's no longer wanted him to service the Dover store due to his tape recording conversations with Lowe's employees in the store, DDP was terminating his employment. (Ex. D, at 451-57). Plaintiff did not deny to Mr. Leaman that he tape recorded conversations.[6] (Id.). Plaintiff asked Mr. Leaman if he could continue to service the Middletown Lowe's store. (Id.). Mr. Leaman explained that DDP did not have any part-time merchandiser positions and that his employment was terminated. (Id.).

### E.    No Allegations of Discrimination or Harassment Against DDP Employees

Plaintiff does not contend that any employee of DDP discriminated against or harassed him. (Ex. G, at ¶ 14). In fact, Plaintiff stated in his deposition that he does not believe that Mr. Leaman discriminated against him in any way. (Ex. D, at 457).

---

[4]    SPMI is human resources outsourcing company which provides human resource services to DDP. (Ex. B, at ¶ 1).

[5]    At his deposition, Plaintiff admitted that he did not know who made the decision to terminate his employment. (Ex. D, at 451).

[6]    Plaintiff later denied tape recording conversations. (Complaint, Ex. G, at ¶ 17). At his deposition, after being confronted with the tape recordings he made, Plaintiff admitted that he had tape recorded conversations in the Lowe's store. (Ex. D, at 373-77).

### F.    Allegations of Discrimination and Harassment By Lowe's Employees

Plaintiff alleges that, during his four months of employment with DDP, he was

subjected to discrimination and harassment by two employees of Lowe's, Ms. Myers and Ms.

Schriver. (Ex. H, at ¶ 14). Specifically, he alleges that:

- Ms. Schriver once told him that the section in which he was working looked "like shit;"(Ex. D, at 212-14).

- Ms. Schriver gave him a difficult time when he was trying to obtain paint at the store's expense to refurbish the overhead beams in the electrical department; (Ex. D, at 232-36).

- Ms. Schriver sent him home to retrieve his vendor vest;[7] (Ex. D, at 237-43).

- Ms. Schriver called him "boy" twice; (Ex. D, at 281).

- Ms. Schriver told him not to drink coffee near the entrance of the store (Ex. D, at 252-55); and

- Ms. Myers told Lowe's employees that she did not want Plaintiff working for DDP in the Dover store.[8] (Ex. D, at 311-12).

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment must be granted when the pleadings, affidavits and discovery

materials produce no "genuine issue as to any material fact" and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Lawrence v. National Westminster

Bank, 98 F.3d 61, 65 (3d Cir. 1996). The non-moving party must point to specific evidence of

record that demonstrates a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324

---

[7]    All vendors at Lowe's stores, including merchandisers employed by DDP, are required to wear a vendor vest while working in a Lowe's store. (Ex. D, at 240, 248-50).

[8]    In October 2003, Plaintiff contends that he complained to Mr. Leaman about Ms. Myers' alleged comments to Lowe's employees. Plaintiff told Mr. Leaman that he believed Ms. Myers did not want him working in the Dover store because Plaintiff had replaced Ms. Myers' son as DDP's merchandiser in the Dover store. (Ex. D, at 311-15, 447).

(1986). Although the Court must resolve all doubts and consider the evidence in the light most

favorable to the opposing party, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), the

non-movant cannot escape summary judgment by introducing "a mere scintilla of evidence" in

her favor, Sarko v. Penn-Del Directory Co., 968 F. Supp. 1026, 1031 (E.D.Pa. 1997) (citation

omitted), aff'd, 189 F.3d 464 (3d Cir. 1999), or by relying on "conclusory allegations,

improbable inferences, and unsupported speculation[.]" J. Geils Band Employee Benefit Plan v.

Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); accord Solt v. Alpo Petfoods,

Inc., 837 F. Supp. 681 (E.D.Pa. 1993), aff'd, 30 F.3d 1488 (3d Cir. 1994). "[W]hen the record,

taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the

moving party is entitled to summary judgment in its favor. Schoonejongen v. Curtiss-Wright

Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986)).

### B.    Plaintiff Cannot State A Claim For Discrimination Under the Delaware Discrimination Act

The DDA states that, "[i]t shall be an unlawful employment practice for an

*employer* to: (1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate

against any individual with respect to compensation, terms, conditions or privileges of

employment because of such individual's race, marital status, genetic information, color, age,

religion, sex or national origin." 19 Del. C. § 711(a) (emphasis added). Under the DDA, an

employer "means any person employing *4 or more employees* within the State at the time of the

alleged violation . . ." 19 Del. C. § 710(6) (emphasis added).

It is undisputed that during Plaintiff's employment with DDP, from October 2003

through January 2004, DDP employed less than 4 employees in the State of Delaware. (Ex. B, at

¶ 2). DDP, therefore, is not an employer under the DDA. Accordingly, summary judgment should be entered in favor of DDP and against Plaintiff on his claims under the DDA.[9]

### C.    Plaintiff Cannot Establish That He Was Subject To Disparate Treatment Discrimination Based On His Sex, Race Or National Origin

Plaintiffs alleging disparate treatment employment discrimination can prove their claims either through direct or circumstantial evidence. Desert Palace, Inc. v. Costa, 123 S.Ct. 2148, 2154 (2003). Here, Plaintiff can produce no direct evidence of sex, race or national origin discrimination. Thus, Plaintiff must prove his claim by circumstantial evidence, and the Court must evaluate his claim in accordance with the burden shifting analysis as set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972), and its progeny. Under that now familiar standard:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981).[10]

The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. St. Mary's Honor

---

[9]    Even assuming Plaintiff could establish DDP was subject to the DDA, for the reasons discussed below, Plaintiff's claims under the DDA, which are analyzed in the same fashion as his federal discrimination claims, would still fail. See Rizzitielo v. McDonald's Corp., 868 A.2d 825, 829-30 (Del. 2005) (holding that claims under the DDA are analyzed under the same framework as Title VII claims).

[10]    Claims brought pursuant to Section 1981 are analyzed under the same framework as Title VII claims. See Lewis v. University of Pittsburgh, 725 F.2d 910, 915, n.5 (3d Cir. 1984).

Center v. Hicks, 509 U.S. 502, 506-07 (1993). Where, as here, a plaintiff cannot prove discriminatory motive, the plaintiff's claim must fail. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (liability depends on whether membership in a protected class actually motivated employer's decision).

### 1.  Plaintiff Cannot Establish a *Prima Facie* Case of Discriminatory Termination

Plaintiff alleges that DDP terminated his employment for multiple discriminatory reasons. To establish a *prima facie* case of discriminatory termination, Plaintiff must show: (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action; and (4) circumstances surrounding the adverse action give rise to an inference of discrimination. See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 356 (3d Cir. 1999). For purposes of this motion only, DDP concedes that Plaintiff can establish the first three prongs of the *prima facie* case. As a matter of law, however, he cannot establish the fourth prong -- that his termination occurred under circumstances that give rise to an inference of discrimination.

"Speculation alone cannot establish a *prima facie* case of discrimination." See Sonja J. Bray v. L.D. Caulk Dentsply Int'l, No. 98-441, 2000 WL 1800527 at * 5 (D.Del. July 21, 2000); see also Igwe v. E.I. DuPont De Nemours and Co., Inc., No. 03-839, 2005 WL 196577 at * 3-4 (D. Del. Jan. 26, 2005) (Farnan J.) (holding that plaintiff failed to make out a *prima facie* case of race or national origin discrimination where he failed to point to specific facts giving rise to an inference of discrimination.); Anderson v. Mcintosh Inn, 295 F.Supp.2d 412, 420 (D.Del. 2003) (Farnan J.) (holding that no inference of discrimination was created where plaintiff proffered no evidence to support his claims of sex, race and national origin discrimination); Turner v. PNC Bank, No. 99-504, 2003 WL 225080392 at *4 (D.Del. November

3, 2003) (granting summary judgment to defendant were record was devoid of concrete evidence to indicate that plaintiff's termination was motivated in any part by racial animus).

Turning to the facts here, Plaintiff has pointed to absolutely no evidence that DDP terminated his employment because of his sex, race or national origin. To the contrary, Plaintiff conceded at his deposition that he did not believe that Mr. Leaman, his supervisor, discriminated against him. (Ex. D, at 457). Further, Plaintiff admitted that he did not know who made the decision to terminate his employment. (Ex. D, at 451). In fact, Plaintiff cannot dispute that Mr. Woodham, who never even met Plaintiff and did not know his race or national origin to be Asian or Korean, made the decision to terminate Plaintiff's employment.[11] (Ex. B, at ¶ 4). In sum, Plaintiff's claim fails because he has not proffered any evidence that Mr. Woodham was motivated by discriminatory animus when he made the decision to terminate Plaintiff's employment. See Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir.1995).

For these reasons, Plaintiff's claims of disparate treatment should be dismissed.

### 2. Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated Non-Discriminatory Reasons for Its Actions

DDP terminated Plaintiff's employment following the report by Ms. Myers that Plaintiff had tape recorded conversations of Lowe's employees in the Dover store in violation of Lowe's policy. Ms. Myers requested that Plaintiff no longer work in the Dover store. Because DDP is a dedicated vendor to Lowe's, in the event an employee's behavior is such that he is removed from his assigned store, DDP cannot place the employee with another retailer and thus must terminate the employment relationship. In this case, DDP did just that.

---

[11]    And of course, Mr. Hanson's name gave no indication of his race or national origin.

Because DDP has met its burden of production by articulating a non-discriminatory reason for its actions, Plaintiff must demonstrate that the DDP's articulated reason is a pretext for discrimination.

### 3. Plaintiff Cannot Demonstrate That Defendant's Articulated Reason Was A Pretext For Discrimination

Once the employer has articulated a non-discriminatory reason for discharging plaintiff, the burden shifts back to plaintiff to show that the employer's articulated reasons were a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). To survive summary judgment, a plaintiff must provide evidence "from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." See Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). A plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason that a reasonable factfinder could either disbelieve the reason or believe that unlawful retaliation was more likely than not the reason for the employer's action. See Simpson, 142 F.3d at 644 (quoting Fuentes, 32 F.3d at 764-65).

Typically, a plaintiff will attempt to show "inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Blackburn v. United Parcel Service, 179 F.3d 81, 93 (3d Cir. 1999) (affirming summary judgment because plaintiff did not prove "sufficient inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons."). For example, the plaintiff may show that the employer has previously discriminated against him, the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or the

employer has treated more favorably similarly-situated persons not within the protected class. Simpson, 142 F.3d at 645 (citing Fuentes, 32 F.3d at 765). The Third Circuit has held that an employer's method of evaluating employees is "not for the court (or factfinder) to decide." Id. The court stated that it did not matter whether the employer made the "best, or even a sound, business decision;" all that mattered was whether discrimination was the real reason for making the decision. Id. (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (citation omitted)). In other words, a plaintiff cannot avoid summary judgment merely by arguing that the employer's decision to discharge him was wrong. See Sylvester v. Unisys Corp., No. 97-7488, 1999 U.S. Dist. LEXIS 3607, at *50 (E.D.Pa. Mar. 25, 1999).

Plaintiff here cannot satisfy his burden because he has not produced a shred of evidence to support an inference that DDP's reason for terminating his employment – Lowe's request that he be removed from the store following a complaint that he tape recorded conversations in the Lowe's store – was a pretext for sex, race or national origin discrimination. Put another way, Plaintiff cannot demonstrate that DDP's articulated reason for his discharge was false and not the actual reason. See Jones v. United States Postal Service, No. 02-1449, 2004 WL 1739714 at * 4 (D.Del July 21, 2004) (granting summary judgment to defendant where plaintiff provided no evidence that would allow a factfinder to reasonably disbelieve the defendant's articulated reasons for plaintiff's discharge); Adkins v. Shoe Show of Rocky Mount, Inc., No. 03-406, 2005 WL 662664 at *5 (D.Del. March 16, 2005) (Farnan J.) (granting summary judgment against plaintiff where she failed to produce sufficient evidence to refute her former employer's explanation for her termination).

As noted above, Plaintiff admitted in his deposition that he had tape recorded conversations in the Dover store and that such conduct violated Lowe's policy. (Ex. D, at 373-

77). Moreover, Plaintiff has not refuted, and cannot refute, that Mr. Woodham made the

decision to terminate Plaintiff's employment based upon the complaint from Ms. Myers that

Plaintiff tape recorded conversations in violation of Lowe's policy, a complaint which Mr.

Woodham had no reason to doubt.

   For these reasons and those set forth above, summary judgment should be entered

in favor of DDP on Plaintiff's claims of sex, race and national origin disparate treatment

discrimination.

### D.    Plaintiff Cannot Establish a Claim for Hostile Work Environment

   "When the workplace is permeated with 'discriminatory intimidation, ridicule,

and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment,' Title VII is violated." Harris v.

Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor, 106 S.Ct. at 2405). As the

Supreme Court has noted, not all offensive language constitutes a hostile environment:

> [M]ere utterance of an . . . epithet which engenders offensive
> feelings in an employee does not sufficiently affect the conditions
> of employment to implicate Title VII. Conduct that is not severe
> or pervasive enough to create an objectively hostile or abusive
> work environment – an environment that a reasonable person
> would find hostile or abusive – is beyond Title VII's purview.
> Likewise, if the victim does not subjectively perceive the
> environment to be abusive, the conduct has not actually altered the
> conditions of the victim's employment, and there is no Title VII
> violation.

Harris, 510 U.S. at 21-22.

   According to Third Circuit precedent, to establish a claim for hostile work

environment, a plaintiff must show five elements: (1) he suffered intentional discrimination

because of his sex, race or national origin; (2) the discrimination was pervasive and regular; (3)

the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally

affect a reasonable person of the same sex, race or national origin in the same position; and (5)

the existence of respondeat superior liability. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293

(3d Cir. 1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

Plaintiff cannot survive summary judgment on his claim of harassment by Ms. Schriver and Ms.

Myers, Lowe's employees, because he cannot establish these requisite elements.

### 1.    Plaintiff Cannot Establish That He Suffered Intentional Discrimination Because of His Sex, Race or National Origin

The threshold issue in a hostile work environment claim is whether the plaintiff

has produced evidence of intentional discrimination based on sex, race or national origin. See,

e.g., Waite v. Blair, Inc., 937 F. Supp. 460, 468 (W.D.Pa. 1995), aff'd, 79 F.3d 1140 (3d Cir.

1996); Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667 (3d Cir. 1999) (a

personality dispute does not become an actionable discrimination claim simply because one of

the parties is a member of a protected class); Moore v. Grove North Am., Inc., 927 F. Supp. 824

(M.D.Pa. 1996) (allegations that supervisor may have disliked the plaintiff, or treated her poorly,

did not amount to unlawful harassment because it was not based on gender); Montandon v.

Farmland Indus., 116 F.3d 355 (8th Cir. 1997) (finding harasser's yelling, gesturing, and use of

foul language not based on gender where plaintiff admitted that harasser's treatment of

employees depended on the degree to which the harasser disliked the employee); Phillips v.

Merchants Ins., 3 F. Supp. 2d 204 (N.D.N.Y. 1998) (finding abusive conduct not based on

gender); Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614 (D.N.J. 1998) (holding

that female employee failed to show gender harassment, despite allegation that harasser had

called her a "bitch" and "miss fucking queen"; animosity was based on personality conflict, not

gender).

Plaintiff cannot establish that the alleged harassing conduct by Ms. Myers and

Ms. Schriver was based on his sex, race or national origin. Indeed, the sum and substance of

Plaintiff's purported evidence of harassment consists of the following:

- Ms. Schriver once told him that the section in which he was working looked "like shit;"

- Ms. Schriver gave him a difficult time when he was trying to obtain paint at the store's expense to refurbish the overhead beams in the electrical department;

- Ms. Schriver sent him home to retrieve his vendor vest;

- Ms. Schriver called him "boy" twice;

- Ms. Schriver told him not to drink coffee near the entrance of the store; and

- Ms. Myers told Lowe's employees that she did not want Plaintiff working for DDP in the Dover store.

Ms. Schriver's and Ms. Myers' comments and actions bear absolutely no relation

to Plaintiff's sex, race or national origin. All of these comments and actions could be directed at

a male or female; an Asian or Non-Asian; a Korean or Non-Korean. Further, Plaintiff cannot

point to any evidence that Ms. Schriver or Ms. Myers was unpleasant to him because of his sex,

race or national origin. Such alleged conduct, while it may be unnerving, is not discriminatory

unless it was based on Plaintiff's membership in a protected classification. The anti-

discrimination laws do not guarantee a workplace free of stress or unpleasantries, only one free

of discrimination. See, e.g., Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp. 2d 559, 564

(E.D.Pa. 2000) ("more than subjective perceptions of unfairness or harshness or a stress-filled

work environment are required" to prove discrimination) (quotation and citation omitted). Thus,

because Plaintiff cannot point to any evidence that the alleged conduct was based on his sex, race

or national origin, his hostile environment claims fail as a matter of law.

## 2.    **The Alleged Harassment Was Not Severe or Pervasive**

Even assuming Plaintiff could show the alleged conduct was based on his sex, race or national origin, the few isolated incidents Plaintiff identifies are too few and far between to rise to the level of severe or pervasive conduct necessary to establish his claim. The Third Circuit has held that "[t]o judge whether [] an environment is hostile or abusive, we must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Walton, 168 F.3d at 667; see also Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1 (1998) (finding that to be pervasive, the incidents, "must be more than episodic, they must be sufficiently continuous and concerted"); Oncale v. Sundner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("insensitivity alone does not amount to harassment; [anti-discrimination laws are] not in effect a 'general civility code.'").

Accordingly, the Third Circuit has consistently set an extremely high bar for establishing severe or pervasive harassment based on sex and race. See, e.g., Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863 (3d Cir. 1990) ("[h]ostile environment claims must demonstrate a continuous period of harassment, and two comments do not create an atmosphere"); Seldomridge v. Uni-Marts, Inc., No. 99-496 GMS, 2001 U.S. Dist. LEXIS 9492, at * 20-29 (D. Del. July 10, 2001) (granting summary judgment based on absence of pervasive or severe conduct, despite claim that supervisor told plaintiff that he would come out of the bathroom wearing "nothing but a cigarette," came out completely naked, and then posed for the plaintiff standing approximately 36 steps away from the plaintiff); Bonora v. UGI Utilities, Inc., No. 99-5539, 2000 U.S. Dist. LEXIS 15172, at 8-16 (E.D.Pa. Oct. 18, 2000) (granting summary judgment despite claim that harasser touched plaintiff on the waist, brushed up against her

buttocks on two or four occasions, bumped her backside, and looked at her chest); Bishop v. Nat'l R.R. Passenger Corp., 66 F. Supp. 2d 650 (E.D.Pa. 1999) (no hostile work environment claim where supervisor made sexual comments to plaintiffs including that "he loved big women and he loved women with big breasts," commented on plaintiffs' body parts, asked one plaintiff out on a date, asked about plaintiffs' personal lives, and stared, glared and leered at plaintiffs); DeCesare v. Nat'l R.R. Passenger Corp., No. 98-3851, 1999 WL 330258 (E.D.Pa. May 24, 1999) (no hostile work environment where supervisor told plaintiff "That's a dangerous position for a woman. . . . like you to be in" as she leaned over a table, stared at her rolling tongue across lips and grabbed and rubbed his crotch in front of plaintiff); Harley v. McCoach, 928 F. Supp. 533, 538 (E.D.Pa. 1996) (plaintiff addressed as "Brown Sugar" and referred to as "nigger" insufficient to establish hostile work environment); Kerrison v. Kane Cmty. Hosp., Civ. A. No. 98-349, 2000 WL 33223084, at *9-11 (W.D.Pa. 2000) (questions to an African American plaintiff if he was from South Bronx and if he carried a boom box, comment that Blacks do not play baseball, statement that "they should just let [Haitians] drown because they don't contribute to the country," comment that jazz and rap music were "jungle music," and addressing plaintiff as "nigger toe" and "blackie" did not establish claim of hostile work environment).

       Turning to the allegations here, a few isolated remarks and actions over the span of four months, none of which contained any reference to Plaintiff's sex, race or national origin and none of which prevented Plaintiff from performing his job, cannot seriously be characterized as severe or pervasive.   Because no rational factfinder could reasonably conclude that the conduct about which Plaintiff complains amounts to "pervasive or severe" harassment, Plaintiff's hostile environment claims fail for this additional reason.

**3.    A Reasonable Factfinder Could Not Find The Alleged Conduct Rose To The Requisite Level Of Objective Severity And Abusiveness**

Not only does Plaintiff fail to establish that the alleged conduct was severe and pervasive, no rational factfinder could conclude that the alleged conduct or comments would detrimentally affect a reasonable person of the same sex, race or national origin.

The comments and actions of Ms. Schriver and Ms. Myers, if true, while unpleasant, could not be fairly characterized as life altering. See Faragher, 524 U.S. at 788 (Title VII does not protect against "ordinary tribulations of the workplace."). It strains credulity for Plaintiff to allege that this series of events altered the conditions of his employment and created an abusive working environment.

Simply put, Plaintiff has no evidence from which a jury could conclude that he endured a work environment detrimental to a reasonable person in his position.

**4.    Plaintiff Cannot Establish Respondeat Superior Liability**

Even assuming that Plaintiff could get past the roadblocks identified above, his harassment claims still cannot withstand summary judgment because he cannot establish the existence of respondeat superior liability.

DDP took prompt and adequate remedial action in response to Plaintiff's claims of alleged harassment by Ms. Schriver and Ms. Myers. Although the Third Circuit has not addressed in a reported decision whether an employer is vicariously liable for the harassing conduct of non-employees, other circuit courts and at least two district courts in the Third Circuit, have followed the Equal Employment Opportunity Commission's guidelines which provide that: "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate

and appropriate corrective action." 29 C.F.R. § 1604.11(e)(1997); See Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854 (1st Cir. 1998) (holding an employer is not liable for a customer's unwanted sexual advances unless the employer ratifies or acquiesces in the customer's demands); Crist v. Focus Homes, Inc., 122 F.3d 1107 (8th Cir. 1997) (holding an employer may be held liable for harassing conduct of non-employee if the employer failed to take remedial action); Folkerson v. Circus Circus Enter., Inc., 107 F.3d 754, 756 (9th Cir. 1997) ("an employer may be held liable for sexual harassment on the part of a private individual, . . . where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct"); Lockard v. Pizza Hut, Inc., 162 F.3d 1062 (10th Cir. 1998) (same); Graves v. County of Dauphin, 98 F.Supp.2d 613 (M.D.Pa. 2000) (same); Sabo v. Lifequest, Inc., No. Civ. A. 95-3757, 1996 WL 583169 (E.D.Pa. Oct. 8, 1996) (same).[12]

Each circuit court that has addressed the question of employer liability for the sexual harassment of employees by non-employees has applied the negligence theory of liability. For example, the Tenth Circuit held that "[b]ecause harassment by [non-employees] is more analogous to harassment by co-workers than by supervisors, we hold the same standard of liability applies to both co-worker and [non-employee] harassment." Lockard, 162 F.3d at 1074.

Under the negligence theory, liability exists only where the employer knew or should have known of sexual harassment and failed to take prompt and adequate remedial action, reasonably calculated to prevent further harassment. See Knabe v. Boury Corp., 114 F.3d 407,

---

[12]    In a recent unpublished opinion, the Third Circuit cited to Lockhart for the proposition that an employer may be liable for the harassing conduct of third parties if the employer was aware of the conduct and failed to take reasonable remedial action in response. See Johnson v. Bally's Atlantic City, 147 Fed. Appx. 284, 286 (3d Cir. 2005).

411-12 (3d Cir. 1997). Therefore, Plaintiff must establish that DDP failed to take adequate steps
once he notified DDP about the alleged harassment by Ms. Schriver and Ms. Myers.

      Here, Plaintiff admits that he never told Mr. Leaman about his allegations that
Ms. Schriver told him that his section looked "like shit," gave him a difficult time when he was
trying refurbish to the overhead beams in the electrical department or sent him home to retrieve
his vendor vest. (Ex. D, at 443-50). As DDP never had actual or constructive notice of these
alleged events, Plaintiff fails to establish respondeat superior liability with respect to this
allegation.

      While Plaintiff did tell Mr. Leaman that Ms. Schriver allegedly called him "boy,"
DDP took prompt remedial action in response to Plaintiff's concerns about the comments. Mr.
Leaman promptly investigated Plaintiff's concerns. (Ex. D, at 434-43). Ms. Schriver
vehemently denied that she made the comment. (Ex. D, at 298). Mr. Leaman spoke to Plaintiff
about the incident twice and directed him to contact him directly if he had any further issues with
Ms. Schriver. (Ex. D, at 434-43). After these conversations in early December 2003, Plaintiff
never again complained to Mr. Leaman about Ms. Schriver. (Ex. D, at 443-50). See Baker v.
Boeing Helicopters, No. 1-3565, 2004 WL 1490358, (E.D.Pa. June 30, 2004) (no respondeat
superior liability where plaintiff did not file any subsequent complaints with supervisors); Kunin,
175 F.3d 294 (providing notice to supervisor did not establish respondeat superior liability where
supervisor instructed co-worker to stay away from plaintiff once plaintiff had no further contact
with co-worker).[13]

---

[13]    Although Plaintiff also spoke to Mr. Leaman about his belief that Ms. Myers was telling Lowe's
employees that she did not want Plaintiff working in the Dover store, this was not a report of harassment,
as Plaintiff explicitly told Mr. Leaman that Ms. Myers did not want Plaintiff working in the Dover Store
because her son had been the previous DDP vendor working at the store, and Plaintiff believed that she
(continued...)

Because DDP took prompt and adequate remedial action that was reasonably calculated to prevent further "harassment," it is not liable for the purported harassment by Ms. Schriver and Ms. Myers. In sum, Plaintiff has failed to establish four of the five elements required to sustain a claim for a hostile work environment in this Circuit. Accordingly, DDP is entitled to summary judgment on Plaintiff's claim of harassment based on sex, race and national origin.

### E.    Plaintiff Cannot Prove A Claim for Retaliation

Plaintiff claims that DDP retaliated against him because he complained of harassment by Ms. Schriver. This claim likewise fails as a matter of law.

To establish a *prima facie* claim of retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected conduct; and (3) a causal connection between the employee's protected activity and the employer's adverse action. See Weston v. Commw. of Pa., 251 F.3d 420, 430 (3d Cir. 2001) (citations omitted).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a non-retaliatory reason for the adverse employment action. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir.), cert. denied, 522 U.S. 914 (1997). "The [employer's] burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated" the action. Id. If an employer satisfies its burden, the plaintiff must then show

---

(...continued)

was angry that Plaintiff had replaced her son. (Ex. D, at 311-15, 447). Plaintiff never told Mr. Leaman that Ms. Myers did not want him working in the store because of his sex, race or national origin. (Id.).

pretext. Id. Here, Plaintiff's claim of retaliation cannot withstand summary judgment because he cannot even establish the elements of the *prima facie* case.

### 1.    Plaintiff Did Not Engage In Protected Activity

Protected activity under Title VII includes formal charges and informal complaints of unlawful discrimination based on race, gender or national origin. See Barber v. CSX Distrib Servs., 68 F.3d 694, 701-02 (3d Cir. 1995)(citing Summer v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (explaining that acceptable forms of protected activity under Title VII include formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges."). Expressions of dissatisfaction, grievances about working conditions and general complaints of unfair treatment are not protected activity. Id.

The record is completely devoid of any complaints of harassment based on Plaintiff's sex, race or national origin. Plaintiff neither formally nor informally complained about harassment to Mr. Leaman. In fact, Plaintiff admitted in his deposition that he never told Mr. Leaman that he believed that his issues with Ms. Schriver or Ms. Myers were based on sex, race or national origin. (Ex. D, 443-46).

Plaintiff's assertion that his complaint to Lowe's that Ms. Schriver called him "boy" constitutes protected activity is simply wrong. The Third Circuit's decision in Barber is directly on point. In that case, the plaintiff wrote a letter to his employer's Department of Human Resources complaining of unfair treatment and expressing his dissatisfaction with not being selected for a position. Id. The letter, however, did not specifically complain of age discrimination. Id. The Third Circuit held that, although Barber's letter was a complaint, it was

"too vague" to support a finding that he engaged in protected activity under the ADEA because the letter did not explicitly or implicitly allege that age was the reason for the alleged unfairness. Id.

Like the complaint letter in Barber, the complaint by Plaintiff to *Lowe's* cannot be construed as protected activity because Plaintiff never stated that the basis of the alleged harassment was his sex, race or national origin. Plaintiff's complaint to Lowe's simply related to unfair treatment by Ms. Schriver but never mentions that the basis of the treatment is sex, race or national origin discrimination. (Ex. D, at 257-62). Consequently, Plaintiff did not engage in protected activity, and therefore, he fails to even make out even the first prong of the retaliation *prima facie* case.

### 2.   Plaintiff Cannot Establish A Causal Connection Between His Alleged Protected Activity And Any Alleged Adverse Employment Action

Plaintiff's claim of retaliation fails because he cannot establish a causal connection between his complaint about Ms. Schriver and his discharge. Plaintiff has produced no evidence to support his claim that his termination was in retaliation for his complaint, other than the fact that they both occurred. This, of course, is not sufficient. In Robinson v. City of Pittsburgh, the Third Circuit held that the fact that an adverse employment action occurs after protected conduct is normally insufficient to establish causation. 120 F.3d, 1256, at 1302 (citing Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991)). See also Kenney v. Footlocker Worldwide, 55 Fed. Appx. 35, 37 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)).

Plaintiff has not produced any other evidence to demonstrate causation. To establish the requisite causal connection, Plaintiff must show that the person who took the adverse employment action knew of the protected activity and acted with a retaliatory motive.

See, e.g., Gemmell v. Meese, 655 F. Supp. 577, 582 (E.D.Pa. 1986). Here, Plaintiff cannot do so.

First, Plaintiff cannot establish that the person who made the decision to terminate his employment, Mr. Woodham, even knew of his alleged protected activity. See Sarullo v. United State Postal Service, 352 F.3d 789, 800-01 (3d Cir. 2003) (affirming entry of summary judgment against plaintiff where he could not establish that the decisionmaker in his termination was aware of plaintiff's protected activity.) Further, even if Plaintiff could establish that Mr. Woodham, an independent employee of SPMI, knew that he complained about Ms. Schriver to *Lowe's*, Plaintiff has not produced any evidence that Mr. Woodham acted with a retaliatory motive. As noted previously, Plaintiff did not even know that Mr. Woodham made the decision to terminate his employment, and testified that Mr. Leaman did not act for any discriminatory or retaliatory reason.

###### 3.    Defendant Has Articulated A Non-Discriminatory Reason for Terminating Plaintiff's Employment and Plaintiff Has Not Established That DDP's Explanation for Its Decision Is A Pretext for Unlawful Retaliation

As set forth in Sections IV.D.2 and IV.D.3 above, DDP has articulated a non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff cannot establish that DDP's articulated reason is pretextual.

## V. **CONCLUSION**

For all of the foregoing reasons, summary judgment should be entered in favor of

DDP and against Plaintiff on all claims.

Respectfully submitted,

Dated:  January 17, 2006

William M. Kelleher (#3961)
Ballard Spahr Andrews & Ingersoll, LLP
919 Market Street, 12th Floor
Wilmington, DE  19801
(302) 252-4460

Attorneys for Defendant
DDP Holdings, Inc.

OF COUNSEL:
David S. Fryman
Lucretia C. Clemons
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215)665-8500