## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM HANSON, III | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION |
| | * | NO. 05-0046(JJF) |
| v. | * | |
| | * | |
| LOWE'S HOME CENTERS, INC., et al. | * | |
| | * | |
| Defendants. | * | |

---

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
### DEFENDANT LOWE'S MOTION FOR SUMMARY JUDGMENT

---

SCHMITTINGER AND RODRIGUEZ, P.A
BY:  WILLIAM D. FLETCHER, JR.
    Bar I.D. #362
BY:  NOEL E. PRIMOS, ESQUIRE
    Bar I.D. #3124
    414 South State Street
    P.O. Box 497
    Dover, Delaware 19903-0497
    (302) 674-0140
    Attorneys for Plaintiff

Dated: 1-30-06

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . .   iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS  . . .    1

SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . .     3

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . .    5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .    15

     I.    SUMMARY JUDGMENT STANDARD . . . . . . . . . . . .   15

     II.   HANSON WAS AT ALL TIMES RELEVANT TO THE COMPLAINT
          AN EMPLOYEE OF LOWE'S . . . . . . . . . . . . . . .   16

     III.  HANSON HAS ESTABLISHED THAT HE WAS SUBJECTED
          TO A HOSTILE WORK ENVIRONMENT  . . . . . . . . . .   20

     IV.   SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
          REMAINING CLAIMS OF RACE AND NATIONAL ORIGIN
          DISCRIMINATION UNDER THE DELAWARE DISCRIMINATION
          ACT AND 42 U.S.C. § 1981 . . . . . . . . . . . . .   23

     V.    SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
          REMAINING CLAIMS OF GENDER DISCRIMINATION . . . . .   28

     VI.   PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE
          OF RETALIATION . . . . . . . . . . . . . . . . . .   30
          A.   Hanson Engaged In a "Protected Activity" . . .   30
          B.   Lowe's Management Retaliated In Response
              to Plaintiff's Protected Activity . . . . . .   32

     VII.  PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE
          OF SLANDER *PER SE* . . . . . . . . . . . . . . .   34

     VIII.HANSON'S STATUS AS AN AT-WILL EMPLOYEE SHOULD NOT
          PROHIBIT HIS CLAIM FOR TORTIOUS INTERFERENCE
          WITH CONTRACT . . . . . . . . . . . . . . . . . .   36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .    37

## TABLE OF AUTHORITIES

**CASES**

Amarnare v. Merrill Lynch,
    611 F. Supp. 344 (S.D.N.Y. 1984) . . . . . . . . . . . 6, 17

Andrews v. City of Philadelphia,
    895 F.2d 1469 (3d Cir. 1990). . . . . . . . . . . . . . 20

Barber v. CSX Distribution Services,
    68 F.3d 694 (3d Cir. 1995) . . . . . . . . . . . . . 30-31

Beaver v. Jacuzzi Bros., Inc.,
    454 F.2d 284 (8th Cir. 1972) . . . . . . . . . . . . . 16

Bishop v. Wood,
    426 U.S. 341 (1976) . . . . . . . . . . . . . . . . . . 15

Braithwaite v. Timken Company,
    258 F.3d 488 (6th Cir. 2001) . . . . . . . . . . . . . 26

Burch v. WDAS AM/FM,
    2002 U.S. Dist. LEXIS 12290 (E.D.Pa.) . . . . . . 23, 30, 32

Cannon v. Delaware,
    523 F.Supp. 31 (D. Del. 1981) . . . . . . . . . . . . 16

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . 15

Cifarelli v. Village of Babylon,
    93 F.3d 47 (2d Cir. 1996) . . . . . . . . . . . . . . . 15

Cobb v. Sun Papers, Inc.,
    673 F.2d 337 (11th Cir. 1982) . . . . . . . . . . . . 17

E.I. Dupont de Nemours & Co. v. Pressman,
    679 A.2d 436 (Del. 1996) . . . . . . . . . . . . . . . 36

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . 21

Hazen v. Modern Food Services, Inc.,
    2004 U.S. App. LEXIS 21467 (3d Cir. 2004) . . . . . . . 31

Jones v. School District of Philadelphia,
    198 F.3d 403 (3d Cir. 1999) . . . . . . . . . . . . 23, 28

Lewis v. University of Pittsburgh,
     725 F.2d 910 (3d Cir. 1984) . . . . . . . . . . . . . . .    25

Neiderlander v. American Video Glass Co.,
     80 Fed. Appx. 256 (3d Cir. 2003) . . . . . . . . . . .    31

Park v. Georgia Gulf Corp.,
     1992 WL 714968 . . . . . . . . . . . . . . . . . . . . .    36

Price v. Delaware Department of Correction,
     40 F.Supp. 2d 544 (D. Del. 1999) . . . . . . . . . . .    30

Riner v. NCR,
     434 A.2d 375 (Del. 1981) . . . . . . . . . . . . . . .    16

Rizzitiello v. McDonald's Corp.,
     2004 Del. Super. LEXIS 46,
     aff'd 868 A.2d 825 (Del. 2005) . . . . . . . . . . . .    16

Saint Mary's Honor Center v. Hicks,
     509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . .    23

Schuster v. Derocili,
     775 A.2d 1029 (Del. 2001) . . . . . . . . . . . . . . .    36

Schwapp v. Town of Avon,
     118 F.3d 106 (2d Cir. 1997) . . . . . . . . . . . . . .    23

Sumner v. United States Postal Services,
     899 F.2d 203 (2d Cir. 1990) . . . . . . . . . . . . . .    31

United States v. Diebold,
     369 U.S. 654 (1962) . . . . . . . . . . . . . . . . .    15

Zelinski v. Pennsylvania State Police,
     2004 U.S. App. LEXIS 16576 (3d Cir. 2004) . . . . . . . 31-32

**STATUTES**

19 Del. C. § 710 . . . . . . . . . . . . . . . . . . . . . 1, 20

19 Del. C. § 710(5) . . . . . . . . . . . . . . . . . . . .    1

19 Del. C. § 711(a) . . . . . . . . . . . . . . . . . . . .    1

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . 1, 20, 23

**RULES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, William Hanson, III, sued Lowe's and co-defendant Ideal Merchandising & Services Unlimited, Inc. ("Ideal"), a.k.a. DDP Holdings) after the defendants terminated Mr. Hanson's employment on January 23, 2004.

On or about March 26, 2004, Hanson timely submitted complaints of discrimination to the Delaware Department of Labor (DDOL) and the Equal Employment Opportunity Commission (EEOC).

Hanson received a Notice of Right to Sue from the DDOL and, on December 28, 2004, timely filed his Complaint in the Delaware Superior Court. Hanson's Complaint alleges that the defendants subjected him to a hostile work environment, retaliated, and otherwise discriminated against him on the basis of his race, sex and national origin under the Delaware Discrimination Act, 19 Del. C. § 710, et. seq. Hanson also alleges that Defendants discriminated against him on the basis of his race and retaliated against him for his complaints of discrimination in violation of 42 U.S.C. § 1981. Hanson's Complaint further alleges that Lowe's defamed him and tortiously interfered with his employment with DDP.

Defendant Ideal/DDP filed its Answer on February 24, 2005. On or about January 28, 2005, this civil action was removed to the United States District Court for the District of Delaware. Lowe's filed its Answer on February 25, 2005.

Lowe's filed its Motion for Summary Judgment on December 29,

1

2005.  Plaintiff files this brief in opposition to Lowe's Motion for Summary Judgment because genuine issues of material fact exist in this case.

## SUMMARY OF ARGUMENT

Summary judgment should be denied because there are genuine issues of material fact with regard to Plaintiff's claims, and those claims should be submitted to a jury.

1.  Hanson was, at all times relevant to the Complaint, an employee of Lowe's. Lowe's exercised significant authority over Hanson's day-to-day work activities, including the time and location of his work, the specific areas of the store in which he could work, the manner in which that work was to be carried out, and ultimately, the decision to terminate Hanson's employment.

2.  Summary Judgment should be denied on Hanson's claims of hostile environment discrimination because Hanson has established a prima facie case.

3.  Summary Judgment should be denied on Hanson's claims of hostile work environment because Hanson has established a prima facie case.

4.  Summary Judgment should be denied on Hanson's claims of race and national origin discrimination because Hanson has established a prima facie case.

5.  Summary Judgment should be denied on Hanson's claims of gender discrimination because Hanson has established a prima facie case.

6.  Summary Judgment should be denied on Hanson's retaliation claims because Hanson has established a prima facie case of retaliation by Lowe's managers based on Hanson's complaint of discrimination.

3

7.    Summary Judgment should be denied on Hanson's claims of slander <u>per</u> <u>se</u> because Linda Myers's statements to Jeremy Leaman impugned Hanson in his work at Lowe's.

8.    Hanson's claims of tortious interference should not be dismissed.

## STATEMENT OF FACTS

### A.    Hanson's Work History

Hanson is an Asian-American male whose national origin is partly Korean. (Deposition of William Hanson, III, at 190-91)(B14-15). Hanson was hired by Defendant Ideal's District Manager, Jeremy Leaman, and began his work with Defendant Ideal on or about October 1, 2003. (Hanson Dep., at 156)(B4). Hanson was employed by Ideal as a vendor to Lowe's. (Hanson Dep., at 156) (B4). Hanson's direct supervisor at Ideal was Jeremy Leaman. (Hanson Dep., at 159-60)(B7-8). Hanson was assigned to Lowe's stores in Dover, Delaware and Middletown, Delaware. (Hanson Dep., at 164-65) (B12-13). Hanson's job required that he market certain products sold in Lowe's plumbing and electrical departments by arranging and properly labeling the product displays. (Hanson Dep., p. 164-65)(B12-13).[1] Lowe's store managers also had the right to direct where Hanson worked in the Lowe's stores and even how he set up certain displays within the store. (Deposition of Yvette Schreiber, at 33)(B126).

### B.    Lowe's Inconsistent Recording Equipment Policy.

Hanson acknowledges that Lowe's had in effect a policy prohibiting use of recording equipment in the Lowe's store. At

---

[1]    As part of his duties with Ideal, Hanson was required to abide by all store policies of the Lowe's stores to which he was assigned. (See Ideal Employee Handbook)(B144). Hanson did abide by all Lowe's policies **of which he was made aware**.

the time of the events in question in this case, however, Hanson was unaware of this policy. (Hanson Dep., at 375)(B85). Myers, a manager at Lowe's, conceded that she is unaware of whether or not Hanson was informed of this policy. (Deposition of Linda Myers, at 80)(B119).

In its "Statement of Facts" section, Lowe's insists that Hanson was aware of the recording policy because Hanson allegedly told Jeremy Leaman "I can't do that" when Leaman suggested Hanson carry a tape recorder around the store to tape Schreiber. (Defendant's Opening Brief, at 6-7) (See also Hanson Dep., at 439-440))(B93-94). To the contrary, Hanson's statement does **not** indicate that he knew about the Lowe's policy. In fact, Hanson's statement in his deposition, "I can't do that" (Hanson Dep., at 440-441)(B94-95), can be interpreted a number of different ways, including only to mean that Hanson had a moral belief that he should not surreptitiously tape record conversations with other employees (which he never did). Indeed, Hanson could **not** have believed, at the time he stated "I can't do that" to Leaman, that he was prohibited from using the tape recorder in any manner in the store since, as indicated infra, he was openly using the tape recorder on a regular basis to assist him with his work. (Hanson Dep., at 346-348)(B74-76). Further, Leaman had seen Hanson use the tape recorder in the store on previous occasions. (Hanson Dep., at 342)(B70).

The Lowe's recording policy itself is internally inconsistent and therefore confusing. It states that "Lowe's prohibits

6

employees from using any recording device on company property."
(See Lowe's Prohibition of Recording Equipment Use)(B141).   The
same policy provides an exception to this prohibition "when there
is '*informed consent*' of all parties to the conversation."
(Id.)(B141)(emphasis in original).   Another section of the policy,
however, states that "no employee or other individual may openly
**or** secretly tape or otherwise record or videotape any
conversation." (Id.)(B141)(emphasis supplied).

     The stated purpose of Lowe's recording policy is to "protect
the privacy of Lowe's personnel and customers." Id.   As outlined
in the policy, violation of the provisions of the policy "will
subject the employee to disciplinary action up to and including
termination." (Id.)(B141).   In her deposition, Linda Myers, one of
the managers at Lowe's at the time of this incident, stated that
she did not know of any Lowe's associate's ever being terminated
for violation of the recording policy.   (Myers Dep., at 46)(B112).

### C.   Hanson's Use of the Recording Device.

     Hanson owned a tape recording device on which he recorded
product numbers as part of his work.   (Hanson Dep., at 345-
47)(B73-75).   Hanson used this tape recording device to verbally
note each SKU number that he needed in order to later type these
numbers into the Lowe's computer and print out labels for the
displays for which he was responsible.   (Hanson Dep., at 346-
48)(B74-76).   Jeremy Leaman knew that Mr. Hanson used the tape
recorder to assist in his duties at the store and even gave Hanson

permission to use the tape recorder in the store. (Hanson Dep., at 341-43)(B69-71). On January 23, 2004, Plaintiff was about to use his tape recording device to record the SKU numbers for the labels. (Hanson Dep., at 344)(B72). Carlos Vasquez, a department manager at Lowes, (Myers Dep., at 33-34)(B99-100), noticed the tape recorder and asked Hanson what he was using the tape recorder for. (Hanson Dep., 344)(B72). Hanson responded that he was using the tape recorder for work. ($\underline{Id}$.)(B72). Vasquez then began to make a number of joking comments of a sexual nature for the tape, asking Hanson whether he had "got that on tape." ($\underline{See}$ Hanson Dep., at 367-70)(B80-83). After this conversation, Vasquez asked for the tape and Hanson voluntarily gave Vasquez the tape. (Hanson Dep., at 365)(B78).

## D. Discrimination Against Hanson by Lowe's Employees.

During his assignment at the Dover, Delaware, Lowe's store, Plaintiff was subjected to constant harassment based on his race, sex and national origin by agents of Lowe's, including the store manager, Yvette Schreiber, and the store sales manager, Linda Myers (both Caucasian females).[2]

---

[2] In his deposition, Hanson also listed a number of instances in which he suffered discriminatory by Lowe's managers Myers and Schreiber when he worked for Lowe's and for Spectrum, another merchandiser to Lowe's. ($\underline{See}$ Opening Brief of Defendant Lowe's, at 7, n.5) Hanson, however, only listed these instances in response to direct questioning by Defense Counsel regarding whether he had suffered discrimination from Lowe's management as a Lowe's employee and as a Spectrum employee. Defendant attempts to argue that these instances are not relevant and should not have been introduced. ($\underline{See}$ $\underline{id}$.). While Hanson did not voluntarily

8

Specifically, on numerous occasions, Yvette Schreiber referred to Hanson as "boy." (Hanson Dep., at 193, 196, 278-82, 335-36, 355, 386)(B17, 20, 50A-50E, 67-68, 77, 90). In particular, on December 2, 2003, Schreiber stated: "Are you going to get any work done today, boy. That's right, I'm talking to you, boy." (Hanson Dep., at 386)(B90). Schreiber knew this term would be particularly offensive to Hanson because she was aware that Hanson was not of full Caucasian origin. (Schreiber Dep., 78-79)(B129-130). Yvette Schreiber further treated Hanson disrespectfully by yelling at him in front of customers and other employees. (Hanson Dep., 382)(B86). On another occasion, Schreiber told Hanson that his work "looked like s\*\*t". (Hanson Dep., at 382)(B86). On November 20, 2003, Schreiber also yelled at Hanson for drinking coffee near the entrance to the Lowe's store. (Hanson Dep., at 383)(B87). On other occasions, Schreiber gave Hanson a hard time when he tried to obtain paint for the beams in the electrical department of Lowe's. (Hanson Dep., at 232-36)(B31-35). Ms. Schreiber also sent Hanson home to retrieve his vendor vest. (Hanson Dep., at 237-43)(B36-42).

Hanson testified that Linda Myers also treated him critically at work. Specifically, Hanson testified that Myers "chastised" him and called other employees to check up on him. (Hanson Dep.,

---

bring up this evidence of past discrimination, it is nonetheless relevant to help show that Myers and Schreiber acted consistently with their past behavior and had a discriminatory intent in their actions in this particular case. See F.R.E. 404(b)(providing that evidence of prior acts by an individual may be admissible to prove intent or motive).

9

at 311-319) (B58-66). In addition, Myers attempted to dissuade Leaman from hiring Hanson. (See Myers Dep., at 82)(B121). At her deposition, Myers admitted that, when Leaman brought Hanson into the Lowe's store before Leaman hired Hanson, Myers specifically told Leaman that she was aware that Lowe's had problems with Hanson in the past (when Hanson had worked for another merchandising company associated with Lowe's). (Myers Dep., at 82)(B122). This contradicts Defendant's representation in its brief that Myers and Schreiber had virtually no problems with Hanson's performance. (See Lowe's Opening Brief, at 9). Myers's information about Hanson's past problems came from another Lowe's employee, Debbie Lenhart, and Myers admitted she had no personal knowledge of any specific performance problems Hanson may have had. (Myers Dep., at 82-83)(B121-122). Nor was there any documentation that Hanson ever had any performance problems with Lowe's. (Myers Dep., at 83-84)(B122-123). Jeremy Leaman confirmed that Myers had tried to convince him not to hire Hanson. (Leaman Dep., at 20)(B134).

Hanson believed that the treatment he received from Myers and Schreiber was motivated both by his race and by his gender. (Hanson Dep., at 286-288). Lowe's attempts to argue that there is no evidence of gender discrimination based on one isolated response from Hanson that male vendors were "treated great, they were left alone." (Defendant's Opening Brief, at 12). This isolated statement is a gross mischaracterization of Hanson's testimony. At another point in his deposition, Hanson testified

10

that he had never witnessed Schreiber "chastising or demoralizing other females as opposed to the males." (Hanson Dep., at 216-17)(B25-26).    Hanson stated that he had heard of Schreiber treating females poorly, but only in a "very rare few" instances. (Hanson Dep., at 218)(B27).  Later in his deposition, Hanson also listed two other male vendors, Folder and Ramirez (of Hispanic origin), whom Schreiber had treated less favorably than other Lowe's employees.    (Hanson Dep., at 392-93)(B91-92).    There is also evidence of race discrimination in the fact that Yvette Schreiber admitted that she knew Hanson was not of full Caucasian origin and repeatedly referred to him as "boy".   (Schreiber Dep., at 78-79)(B129-130).

Hanson also testified very specifically that he believed Schreiber treated him poorly based on his national origin.  Hanson stated that Schreiber treated him differently even from other individuals of non-Caucasian origin.  (Hanson Dep., at 219)(B28). Based on this treatment, Hanson concluded that: "I have no other reason but to believe that she had something against my national origin." (Hanson Dep., at 219)(B28).

## E.   Hanson's Complaint to Lowe's Headquarters

After suffering through a number of incidents of ill treatment by Lowe's managers, Hanson called and filed a formal complaint with Lowe's Customer Care Line on December 3, 2003. (Hanson Dep., at 257-64)(B43-50).  Hanson complained specifically of the incidents in which Schreiber had referred to him as "boy".

11

Id. Hanson further complained of instances in which Schreiber had
been overly critical of his work and had yelled at him in front of
Lowe's employees and customers. Id.

Lowe's Store Manager, Yvette Schreiber, was aware that Hanson
had made a complaint to Lowe's Corporate Office about her
discriminatory conduct toward him. In a "Customer Care Incident
Fax" dated December 3, 2003, it was reported that Hanson had
complained of discriminatory treatment by Schreiber. (See
Customer Care Incident Fax, dated December 3, 2003)(B138). The
incident report states that Schreiber "calls him boy" and
"embarrassed him in front of employees and customers with her
nasty comments." (See "Customer Care Incident Fax" dated
12/3/2003)(B138). The incident report was e-mailed to Yvette
Schreiber. (Id. Schreiber Dep., at 47) (B128A). Schreiber was, as
a result of this e-mail, aware of Hanson's complaint.

## F.   Evidence of Retaliation Against Hanson

In late January of 2004, Lowe's managers retaliated against
Hanson for his complaint. On or about January 23, 2004, Carlos
Vasquez, a department manager at Lowe's, called Linda Myers and
informed Myers that Hanson had been using a tape recorder in the
store. (Myers Dep., at 33-36) (B99-102).

Immediately after receiving the phone call from Vasquez,
Myers, without listening to the contents of the tape or even
asking what was on the tape, called to inform Schreiber of the
situation. (Myers Dep., at 37-38) (B103-104). Schreiber, also
without examining the tape, asking Hanson about the tape, or in

12

any way confirming the validity of Vasquez's story, told Myers to
call Jeremy Leaman, Hanson's direct supervisor at Ideal. (Myers
Dep., at 39-40)(B105-106).

Myers then, still without ever listening to the tape or
confirming in any way that Hanson had in fact been tape recording
anything in the store, proceeded to call Jeremy Leaman and request
that Hanson not work in the Dover Lowe's store again. (Myers
Dep., at 42-46) (B108-112). Jeremy Leaman confirmed, in his
deposition, that Myers informed him that Hanson was:

   walking around the Lowe's Home Improvement Store with a tape
   recorder attempting to tape/taping conversations between
   Lowe's employees, Lowe's management, and himself. The Sales
   Manager further stated that because Hanson's behavior was
   so disruptive in nature that she contacted the Lowe's Store
   Manager. It was decided that they (Lowe's Home Improvement)
   do not want this merchandiser in their store because his
   behavior was disrupting the Lowe's employees job performance
   and was unproductive.

(See Sworn Statement of 4/14/2004 signed by Jeremy Leaman)(B142);
(see also Leaman Dep., at 49)(B137).

The assertion in the sworn statement that "[i]t was decided
that **they** (Lowe's Home Improvement) do not want this merchandiser
in **their** store" (Sworn Statement of 4/14/2004)(B142)(emphasis
provided), makes clear that during the telephone conversation
between Myers and Schreiber they, together, made the decision that
they did not want Hanson in the Dover Lowe's store. Leaman also
signed a "Termination/Separation Notice" on the day of Hanson's
termination which states that Lowe's management did "not want this
employee working in their store." (Termination/Separation
Notice)(B143). From these statements it is evident that Schreiber
and Myers jointly decided that they did not want Hanson in the

13

Dover Lowe's store any longer (or Schreiber, as Myers's supervisor, instructed Myers to have Hanson banned from the Lowe's store)--a decision both managers knew would effectively terminate Hanson's employment.

Myers admitted that she never even attempted to listen to the tape allegedly recorded by Hanson until her attorney sent her a copy of the tape. (Myers Dep., at 56-57)(B114-115). Further, Myers never attempted to confirm whether Hanson had actually even recorded any conversations at all. (Id.) Myers further acknowledged that, at the time of her deposition, she still had no idea of the actual contents of the tape. (Myers Dep., at 57)(B115).

Myers stated, in her deposition, that the purpose of her call was to instruct Leaman to bar Hanson from ever returning to the Lowe's of Dover. (Myers Dep., at 45-46) (B111-112). This action effectively terminated Hanson's employment with Ideal. (Leaman Dep., at 47-48) (B135-136). Myers further admitted that she did not know of any other employee ever being terminated from Lowe's for violating the Lowe's recording policy. (Myers Dep., at 46)(B112). Myers also stated that, had one of Lowe's associates been recording in the store, Lowe's would have investigated the incident more fully. (Myers Dep., at 55)(B113).

14

### ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate only where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of identifying evidence it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). For purposes of a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The non-moving party's version of the facts must be accepted, and all disputed facts resolved in his favor. Bishop v. Wood, 426 U.S. 341 (1976). The Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Plaintiff has raised several genuine issues of material fact that remain unresolved at this stage of his case. These issues of fact are sufficient to preclude summary judgment on his claims.

## II.   HANSON WAS AT ALL TIMES RELEVANT TO THE COMPLAINT AN EMPLOYEE OF LOWE'S.

Lowe's attempts to argue that Hanson's allegations under the Delaware Discrimination Act should fail because Ideal, not Lowe's, was Hanson's employer. Lowe's, however, maintained such close control over Hanson's work at the Lowe's stores, and over his eventual termination, that Lowe's was also Hanson's employer along

15

with Ideal.

The definition of "employee" as "an individual employed by an employer" is identical under the DDA and Title VII. Consequently, although cases arising under the Delaware Discrimination Act are governed by state law, courts generally apply the same principles of law from Title VII. See Cannon v. Delaware, 523 F. Supp. 31 (D. Del. 1981)(holding that "Delaware law prohibits employment discrimination in terms almost identical to those of Title VII"); see also Riner v. NCR, 434 A.2d 375 (Del. 1981)(courts examining DDA claims generally take interpretive lead from Title VII); Rizzitiello v. McDonald's Corp., 2004 Del. Super. LEXIS 46, aff'd 868 A.2d 825 (Del. 2005)(employee's racial discrimination claim under 19 Del.C. § 711 analyzed under the same considerations as a claim under Title VII).

As the District Court held in Amarnare v. Merrill Lynch, 611 F. Supp. 344 (S.D.N.Y. 1984), pursuant to Title VII, an employee may be considered to be employed by two concerns simultaneously. Id. at 347 (citing Beaver v. Jacuzzi Bros., Inc., 454 F.2d 284, 285 (8th Cir. 1972)). In Amarnare, the District Court held that the plaintiff was employed simultaneously by her "temp" agency and also by Merrill Lynch, because Merrill Lynch controlled "the means and manner of [the plaintiff's] performance." Id. at 348. The District Court held that the fact that the plaintiff was paid by her "temp" agency was "an insufficient basis on which to characterize plaintiff as an independent contractor" given the amount of control Merrill Lynch exercised over plaintiff's work.

16

Id. (348).

The District Court reached its decision in the Amarnare case by analyzing the "'economic realities' of the situation 'viewed in light of the common law principles of agency and the right of the employer to control the employee.'" Id. at 347-48 (citing Cobb v. Sun Papers, Inc., 673 F.2d 337, 339 (11th Cir. 1982), cert. denied, 459 U.S. 874 (1982)).   This Court must also examine the economic realities of Hanson's employment situation.   While Hanson was officially employed by Ideal, his merchandising job was conducted exclusively with two specific Lowe's stores, in Dover and Middletown.   Lowe's controlled the stores where Hanson worked and even the location within the stores where Hanson could work. Hanson was further required to abide by the policies of the Lowe's stores (See Ideal Employee Handbook)(B144), and to get permission for his actions through Lowe's store managers.    (See Schreiber Dep., at 33)(B126).

The deposition testimony of Lowe's Dover Store Manager, Schreiber, clearly delineates the close control Lowe's exercised over vendors such as Hanson.   Schreiber stated as follows:

>   When you are a vendor for Lowe's, you can't just come into Lowe's and start doing whatever you want.    Before you do anything, you have to either ask the zone manager or the operating manager or myself on where you can place merchandise . . . .

(Schreiber Dep., at 33)(B126).

Schreiber's testimony is indicative of the amount of control Lowe's exercised over Hanson.   As Schreiber testified, Hanson could not even begin his work without consulting with a manager at

17

Lowe's; instead, Hanson had to "ask the zone manager or the operations manager, or [Schreiber]" as to where to place his merchandise. Id.

Hanson's testimony also reveals the amount of control Lowe's managers had over his daily work. Ms. Schreiber's comment that the area in which he was working "looked like s**t" indicates that she had the authority to supervise and control Hanson's everyday activities. (Hanson Dep., at 212-14) (B21-23). Hanson also testified that Schreiber gave him a hard time when he was trying to obtain paint from the store to refurbish the beams in the electrical department. (Hanson Dep., at 232-36)(B31-35). Schreiber also once sent Hanson home to retrieve his vendor vest when he forgot it. (Hanson Dep., at 237-43) (B36-42). On another occasion, Schreiber yelled at Hanson for drinking coffee near the entrance to the Lowe's store. (Hanson Dep., at 383)(B87). In early December of 2003, Schreiber was walking by Hanson in the store and stated "Are you going to get any work done today, boy. That's right, I'm talking to you, boy." (Hanson Dep., at 386) (B90). Myers also exercised control over Hanson. As Hanson testified, Myers would often criticize his work and even call other employees to check on Hanson's behavior. (Hanson Dep., at 311-319)(B58-66).

As these incidents make clear, Lowe's management had authority (and regularly exercised this authority) to supervise and control Hanson's day-to-day work. Lowe's, and Schreiber in particular, directed where Hanson worked in the store, what he

18

wore in the store, where he ate or drank in the store, and the quality of his work in the store.

Further, as an example of the amount of control Lowe's had over Hanson, it was a Lowe's manager, Linda Myers, who caused Hanson's employment to be terminated. Myers's phone call to Jeremy Leaman caused Leaman to terminate Hanson's employment. Because Lowe's was the only store Ideal dealt with, once Hanson could no longer work in the Dover store, he was terminated by Ideal.

The Court cannot grant summary judgment on such a highly factual question where there is a legitimate dispute as to whether Hanson was an employee of Lowe's.

## III. HANSON HAS ESTABLISHED THAT HE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT.

Hanson's claims that he was subjected to a hostile work environment under the Delaware Discrimination Act and 42 U.S.C. § 1981 should survive summary judgment because Hanson has established a prima facie case that he was subjected to such discrimination.

As an employee of Lowe's, Hanson was subjected to a hostile work environment based on race, national origin, and gender discrimination. In order to establish a prima facie case for hostile work environment harassment, a plaintiff must demonstrate that: (1) he suffered intentional discrimination because of his sex, race, and/or national origin; (2) the discrimination was

19

pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same sex or national origin in that position; and (5) there is respondeat superior liability. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

As demonstrated infra, Hanson suffered intentional discrimination based on his race, sex, and national origin. Hanson's testimony, as well as his complaint to Lowe's Customer Care Line, detail that the discrimination by Schreiber, a Caucasian female supervisor, in particular her referring to Hanson as "boy", was pervasive. The detrimental effect on Hanson of Schreiber's discriminatory treatment can be inferred from the fact that he felt strongly enough about Ms. Schreiber's conduct to call Lowe's Headquarters and register a formal complaint against Schreiber on December 12, 2003. (See Customer Care Incident Fax)(B138). As to the fourth prong of the test, the Court can take judicial notice that a male of Asian-American origin being referred to as "boy" by a supervisor would detrimentally affect a reasonable person of the same sex, race, or national origin.

Hanson has also established respondeat superior liability in that Myers and Schreiber were acting in their supervisory capacity as Lowe's managers when they committed these discriminatory acts. As held by the United States Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the actions of an employee's supervisor may be imputed to the employer. In Boca Raton the

20

Supreme Court held that the plaintiff, a lifeguard for the city of Boca Raton, had a valid hostile work environment claim against the city based on the actions of two of her supervisors. Id. at 809-810. The Supreme Court rejected an "active-use" test for cases of hostile environment based on vicarious liability and chose a "passive or implicit" misuse of supervisory authority test. Id. at 804-05.

The discrimination by Myers and Schreiber occurred in the course of their duties with Lowe's. Both Schreiber and Myers took advantage of their authority over Hanson to ridicule and criticize him. As Hanson testified, Schreiber frequently criticized him and used her supervisory authority to make things difficult for him at work. Both Schreiber and Myers used their managerial authority to have Hanson terminated from his position with Ideal. Because Myers and Schreiber discriminated against Hanson directly in their supervisory capacity, their conduct was, at the least, a passive misuse of their supervisory authority over Hanson. Lowe's is, therefore, liable on the basis of respondeat superior.

## IV.  SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S REMAINING CLAIMS OF RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER THE DELAWARE DISCRIMINATION ACT AND 42 U.S.C. § 1981.

Defendant argues that Hanson has not established a prima facie case of race or national origin discrimination under either the Delaware Discrimination Act or 42 U.S.C. § 1981. A plaintiff may establish a prima facie case of race or national origin

21

discrimination by "presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements." Burch v. WDAS AM/FM, 2002 U.S. Dist. LEXIS 12290 (E.D.Pa.), at *17-18 (citing Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)). If the plaintiff cannot present direct evidence of discrimination, "he may survive summary judgment on a McDonnell Douglas pretext theory." Id. at *20.

The McDonnell Douglas test requires that a plaintiff establish that: 1) he is a member of a protected class; 2) he was qualified for his position; 3) he was subject to adverse employment action; and 4) the circumstances of this adverse employment action give rise to an inference of discrimination. Jones v. School District of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999). A court should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

Defendant does not contest that Plaintiff has established the first three prongs of the test for a prima facie case of discrimination. (See Defendant's Opening Brief at 18). Lowe's argues only that Plaintiff cannot establish the final prong because Plaintiff cannot show that Lowe's actions give rise to an inference of discrimination. (Id. at 18). In his official complaint to Lowe's Customer Care Line on December 3, 2003, Plaintiff complained specifically that Schreiber had repeatedly called him "boy." (See "Customer Care Incident Fax" dated

22

12/3/03)(B138). Further, in his deposition testimony, Hanson repeatedly reiterated his claim that Schreiber had called him "boy". (See Hanson Dep., at 193, 196, 278-82, 335-36, 355, 386)(B17, 20, 50A-50E, 67-68, 77, 90). Schreiber admitted in her deposition that she knew that Hanson was not of full Caucasian origin. (Deposition of Yvette Schreiber, at 78-79)(B129-130). Yet, with this knowledge, and **because** of this knowledge, Schreiber repeatedly referred to Hanson as "boy". This fact, alone, is direct evidence of discrimination, sufficient to preclude summary judgment.

The fact that Schreiber, a Lowe's manager, constantly harassed Hanson, including criticizing his work and referring to him as "boy," certainly gives rise to an inference of discrimination, particularly since Myers told Leaman to terminate Hanson after consulting directly with Schreiber and Leaman stated that "they" (i.e. Schreiber and Myers) wanted Hanson fired. (See Sworn Statement dated 4/14/2004)(B142). In addition, Myers knew that Hanson was half Korean based on a conversation she had with him concerning martial arts in which Hanson told her directly that he was half Korean. (Hanson Dep., at 230-232)(B29-31).

Because Hanson has demonstrated a prima facie case of race and national origin discrimination, the burden shifts to Lowe's to articulate a legitimate, non-discriminatory reason for its actions. See Lewis v. University of Pittsburgh, 725 F.2d 910, 915, n.5 (3d Cir. 1984). Lowe's managers Myers and Schreiber claim that their reasons for requesting Hanson's termination were based

23

solely on Hanson's violation of the Lowe's Recording Equipment policy. (Myers Dep., at 46)(B112). Hanson specifically stated in his deposition that he was not aware of Lowe's recording policy. (Hanson Dep., at 375)(B85). Although Hanson admittedly told Jeremy Leaman "I can't do that" when Leaman suggested that Hanson record his conversations at the Dover store, this statement does not prove, as Lowe's claims, that Hanson had knowledge of the Lowe's policy. Instead, it indicates Hanson's moral belief that he should not secretly tape record his conversations with another person. Obviously, Hanson could **not** have believed at the time that he was prohibited from using a tape recorder at all, since he was openly tape recording "SKU" numbers as an aid in completing his duties. (Hanson Dep., at 341)(B69). Moreover, Leaman knew that Hanson was using the tape recorder to assist his work in the store and had seen Hanson using the tape recorder in the store. (Hanson Dep., at 341-43)(B69-71).

Defendant's stated purpose behind the no recording policy is to protect the privacy of the store employees. As Hanson testified, he used his tape recorder to record "SKU" numbers on labels within the store. Hanson, admittedly, did use the tape recorder to record some comments that Carlos Vasquez made. Vasquez, however, knew about the tape recorder and was making the comments specifically <u>for</u> the tape, as a joke. (Hanson Dep., at 367-70)(B80-83). Vasquez, therefore, had given his informed consent to be taped, which is an exception to the Lowe's recording policy. (<u>See</u> Lowe's Prohibition of Recording Equipment

24

Use)(B141).  Furthermore, Hanson immediately and voluntarily gave
the tape to Carlos Vasquez when Vasquez asked for it.  (Hanson
Dep., at 365-66)(B78-79).

    Further, Lowe's response to Hanson's infraction was
disproportionate and unprecedented in the Lowe's store.  Myers,
without bothering to listen to the tape, question Hanson, or
confirm the report from Carlos Vasquez in any way, immediately
called Jeremy Leaman to demand that Hanson be removed from the
Lowe's store and thereby terminated.  (Myers Dep., at 37-46)(B103-
112).  Lowe's argues that Myers and Schreiber "reasonably relied"
on the report from Vasquez that Hanson had tape recorded a
conversation in making their decision to request Hanson's
termination.  (See Defendant's Opening Brief, at 22).  As part of
its argument, Lowe's quotes an opinion from the Sixth Circuit,
Braithwaite v. Timken Company, 258 F.3d 488, 494 (6th Cir. 2001),
in which the Sixth Circuit held that

> [W]e do not require that the decisional process used by the
> employer be optimal or that it left no stone unturned.  The
> key inquiry is whether the employer made a reasonably
> informed and considered decision before taking an adverse
> employment action.

Id.

    In Hanson's case, however, neither Myers nor Schreiber turned
over **any** stone before making the decision to get rid of Hanson.
Myers admitted in her deposition that she never listened to the
tape to see what was actually recorded on it.  (Myers Dep., at 41-
42) (B107-108).  Indeed, she never even verified that Vasquez had
the tape in his possession.  Id.  Moreover, neither Myers nor

Schreiber conducted **any** investigation of any type, including questioning Hanson to determine whether and why he was using the alleged recording device, and whether he was aware of Lowe's policy.    Instead, Myers lied to Hanson's supervisor, Leaman, informing him that Hanson was "walking around" the store "attempting to tape . . . conversations between Lowe's employees, Lowe's management, and himself" and demanded that Hanson be fired. (See Termination Statement signed by Jeremy Leaman)(B143). Myers's immediate, disproportionate response of demanding that Hanson be terminated, raises an inference of discrimination, particularly in light of the fact that Myers knew of no Lowe's associate who had ever been terminated for violating Lowe's recording policy.    (Myers Dep., at 46)(B112).

## V.    SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S REMAINING CLAIMS OF GENDER DISCRIMINATION.

Hanson's remaining claims of gender discrimination under the DDA arise out of essentially the same facts as his claims for race and national origin discrimination.    The test for a prima facie case of gender discrimination is the same as for race discrimination: 1) membership in a protected class; 2) qualification for the position in question; 3) adverse employment action; and 4) circumstances surrounding the action which give rise to an inference of discrimination.    Jones, 198 F.3d at 410-411.

Hanson's official complaint to Lowe's Customer Care Line

26

complained specifically about Schreiber repeatedly calling him "boy" in front of other customers and employees.    (See "Customer Care Incident Fax")(B138).    Schreiber's repeated references to Hanson as "boy" imply discrimination based on Hanson's gender as well as his race.    The Court can take judicial notice that a female supervisor's referring to a male subordinate by the term "boy" has clearly derisive, gender-based connotations.    Again, Myers consulted directly with Schreiber before informing Leaman that Lowe's wanted Hanson terminated.    These facts certainly give rise to an inference that Hanson was terminated based on his gender as well as his race and national origin.

In her deposition, Schreiber categorically denied ever calling Hanson "boy".    (Schreiber Dep., at 42-43)(B127-128).    This direct conflict in testimony is a significant and genuine issue of material fact still in conflict in this case.    Further, the gender and race-driven connotations of repeatedly referring to a male subordinate of non-Caucasian race as "boy," together with Hanson's ultimate termination at the hands of Schreiber and Myers, give rise to an inference of discrimination, also precluding summary judgment.

## VI.    PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION

In order to establish a prima facie case of retaliation, Hanson must show that: 1) he engaged in protected activity; 2) he suffered adverse employment action; and (3) a causal link exists between the employment actions and the exercise of the protected

27

activity. <u>Price v. Delaware Department of Correction</u>, 40 F.Supp. 2d. 544, 552 (D. Del. 1999). Evidence of a causal connection between the employee's protected activity and the adverse employment action may be shown by close temporal proximity between the two actions. <u>See</u> <u>Burch v. WDA AM/FM</u>, 2002 U.S. Dist. LEXIS 12290 (E.D.Pa.), at *32.

## A. Hanson Engaged In a "Protected Activity".

The record shows that Hanson made a formal complaint to Lowe's Customer Care Line on December 3, 2003 about Schreiber, the store manager of the Dover Lowe's. (<u>See</u> "Customer Care Incident Fax")(B138).

Lowe's contends that Hanson's official complaint to the Lowe's Customer Care Line about Schreiber's references to him as "boy" did not constitute a "protected activity." In defense of this proposition, Lowe's cites the case of <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694 (3d Cir. 1995). In <u>Barber</u>, the Third Circuit held that the plaintiff's letter stating, "I am quite puzzled why the position was awarded to a less qualified individual" was too vague to be considered a protected activity because it did not "specifically complain about age discrimination." <u>Id</u>. at 702. The <u>Barber</u> court was quick to clarify, however, that they did not "require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct'. . . ." Protected activities may also include "informal protests of discriminatory

28

employment practices, including making complaints to management .
. .." Id. at 702 (quoting Sumner v. United States Postal
Services, 899 F.2d 203, 209 (2d Cir. 1990)).

The Third Circuit has also held that even informal complaints
of discrimination made to "co-workers rather than management
constitute protected activity for the purposes of establishing a
prima facie case of retaliation." Hazen v. Modern Food Services,
2004 U.S. App. LEXIS 21467 (3d Cir. 2004), at *4 (citing
Neiderlander v. American Video Glass Co., 80 Fed. Appx. 256, 259
(3d Cir. 2003)). The Third Circuit also held, in Zelinski v.
Pennsylvania State Police, 2004 U.S. App. LEXIS 16576 (3d Cir.
2004), that a plaintiff who had merely related to her superior two
incidents involving sexual harassment had engaged in a protected
activity even though the plaintiff never filed a formal complaint.
Id. at *13-14. The Zelinski court noted that, in determining
whether or not the plaintiff has engaged in protected activity,
the court must "analyze the message conveyed, rather than the
'medium of conveyance.'" Id. (quoting Barber, 68 F.3d at 702).
The Third Circuit also concluded, in Zelinski, that "a reasonable
jury could conclude that this conversation fell within the ambit
of a protected activity." Id. at *14.

The Barber court rejected the plaintiff's claim of
retaliation because he had failed to "explicitly or implicitly
allege that age was the reason for the alleged unfairness."
Barber, 68 F.3d at 702. Hanson's complaint to the customer care
line is a far cry from the vague complaint in Barber. Hanson

29

complained very specifically that Schreiber called him "boy". Although Hanson did not use the word "discrimination" in his complaint, his complaints that Schreiber called him "boy" are sufficient to, at least implicitly, allege a claim of discrimination based on race and gender. A reasonable jury could conclude that Hanson's very specific complaint to the Lowe's Customer Care Line "fell within the ambit of protected activity." Zelinski, 2004 U.S. App. LEXIS 16576 at *14.

## B. Lowe's Management Retaliated In Response to Plaintiff's Protected Activity.

Schreiber learned of Hanson's complaint to Lowe's company headquaters on December 3, 2003 through an internal e-mail containing Hanson's complaint. (Schreiber Dep., at 47) (B128A). On January 23, 2004, Myers (the assistant manager and Schreiber's immediate subordinate) was instructed by Schreiber to call Hanson's direct supervisor, Jeremy Leaman, to report Hanson's actions. (Myers Dep., at 38-39)(B104-105). Myers told Leaman to ban Hanson from working in the Dover Lowe's store--thereby terminating Hanson's employment. (Myers Dep., at 44-45)(B110-111). Leaman stated that when Myers talked to Schreiber "[i]t was decided" (i.e. Schreiber and Myers decided), that "they" did not want Hanson in the store. (See Sworn Statement of 4/14/04)(B142). Certainly, construing the facts in a light most favorable to Plaintiff, there is a strong inference that it was both Schreiber's and Myers's desire that Hanson be terminated. This

30

extremely close temporal proximity is a strong indication of the
retaliatory animus behind Lowe's instructions to Leaman.

In addition, Lowe's response to Hanson's complaint, in which
its managers, Myers and Schreiber, demanded that Hanson be
terminated from Ideal, was disproportionate to Hanson's actions.
Myers testified that she knew of no instance in which a Lowe's
associate had ever been terminated for violating Lowe's recording
policy. (Myers Dep., at 46)(B112). Even assuming, arguendo, that
Hanson did violate the Lowe's recording policy, the policy itself
states that violation of the policy subjects the Lowe's employee
to discipline "up to" termination. (Lowe's Prohibition on
Recording Equipment)(B141). The fact that Lowe's managers
immediately demanded that Hanson be terminated from Ideal without
even listening to the tape Hanson allegedly made or questioning
Hanson about the tape raises an inference of retaliatory animus
against him.

## VII. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF SLANDER *PER SE*.

In its brief, Lowe's focuses on the wrong statements made by
Lowe's employees in arguing that Hanson's claims of slander per se
should fail. Lowe's contends that the slander claims should fail
because Vasquez's statements to two merchandisers that he procured
Hanson's termination were substantially true. (See Defendant's
Opening Brief, at 35). This argument amounts to nothing more than
misdirection by Lowe's. The only statements to which Plaintiff's
Complaint refers in the facts, and to which Plaintiff's count of

31

slander pertains, were statements by Myers to Jeremy Leaman. These statements by Myers were documented in a termination letter and sworn statement, both signed by Leaman. (B143 & B142). Both documents indicate that store management (specifically Myers) reported to Leaman that Hanson was:

> walking around the Lowe's Home Improvement Store with a tape recorder attempting to tape/taping conversations between Lowe's employees, Lowe's management, and himself. The Sales Manager further stated that because Mr. Hanson's behavior was so disruptive in nature that she contacted the Lowe's Store Manager.

Id.

Leaman confirmed in his deposition that this was an accurate representation of what he was told by Myers. (Leaman Dep., at 49)(B137).

These statements are the slanderous statements about which Hanson complains, not any statements by Carlos Vasquez as Lowe's attempts to suggest. As Hanson testified and as the tape from Vasquez showed (Hanson Dep., at 367-70)(B80-83), at the very most, Hanson recorded a few sentences spoken by Vasquez. (Hanson Dep., at 367-68)(B80-81). Further, Hanson testified that Vasquez was aware that Hanson was taping the conversation and Vasquez was merely making outrageous statements for the tape recorder. (Hanson Dep., at 344, 461)(B72, B96A).

Myers's statements that Hanson was "walking around" the Lowe's store taping conversations between Lowe's employees and Lowe's management and himself were untrue. The record shows that Hanson, at the most, was stationary and recorded part of one conversation with one employee at Lowe's who gave his informed

32

consent to be taped. Myers's statements were, therefore, untrue. Because these statements impugned Hanson in his business, trade or profession, namely in his job at Lowe's, these statements must be considered slander per se.

Furthermore, these statements by Myers are attributable to Lowe's because Myers was a manager at Lowe's at the time and was acting directly in the course and scope of her employment.

## VIII. HANSON'S STATUS AS AN AT-WILL EMPLOYEE SHOULD NOT PROHIBIT HIS CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT.

Summary judgment should be denied on Hanson's claims of tortious interference with contract. As Defendant's Brief notes, Delaware follows the Restatement (Second) of Torts § 767. (Defendant's Opening Brief at 38). Further, as the Delaware Supreme Court held in E.I. Dupont de Nemours & Co. v. Pressman, 679 A.2d 436 (Del. 1996), even an at-will employee has a right to the protections of good faith and fair dealing in his employment relationships. There is no logical reason that Lowe's should be permitted to interfere with even the at-will employment relationship between Hanson and Ideal. This legal right to continue an at-will employment relationship without unlawful hinderance was also reinforced recently in the Delaware Supreme Court case of Schuster v. Derocili, 775 A.2d 1029 (Del. 2001).

Further, the Delaware District Court opinion in Park v. Georgia Gulf Corp., 1992 WL 714968, on which Defendant relies was decided prior to the Delaware Supreme Court's decisions in

33

<u>Pressman</u> and <u>Schuster</u>.   The <u>Park</u> case should perhaps be re-evaluated in light of the obligation of good faith and fair dealing mandated by <u>Pressman</u> and <u>Schuster</u>.

34

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

SCHMITTINGER & RODRIGUEZ, P.A.

BY: _____

WILLIAM D. FLETCHER, JR.
Bar I.D. #362
NOEL E. PRIMOS
Bar I.D. #3124
414 S. State Street
P.O. Box 497
Dover, DE    19901
(302) 674-0140
Attorneys for Plaintiff

DATED: 1-30-06
WDF:NEP:ac

35